**OTIS ELEVATOR COMPANY, Appellant,**

v.

**Fay Ann SEALE, Appellee.**

**No. 20718.**

United States Court of Appeals
Fifth Circuit.

July 28, 1964.

Rehearing Denied Sept. 9, 1964.

Ralph L. Kaskell, Jr., Deutsch, Kerrigan & Stiles, New Orleans, La., for appellant, John F. Tooley, Jr., New Orleans, La., of counsel.

Herbert W. Christenberry, Jr., Kent Satterlee, Jr., New Orleans, La., for appellee.

Before BROWN, MOORE * and GEWIN, Circuit Judges.

* Of the Second Circuit, sitting by designation.

GEWIN, Circuit Judge.

This personal injury action was brought by plaintiff Seale (appellee) against Grain Dealers Mutual Insurance Co., liability insurer of Winchester Apartments, Inc., (insurer) and Otis Elevator Company, (Otis) the manufacturer, installer and maintenance contractor for the elevators in the Warwick Apartments Building in New Orleans.[1] Both defendants denied negligence; the insurer cross-claimed against Otis; Otis pleaded its maintenance contract with Winchester, and unsuccessfully moved to dismiss for lack of jurisdictional amount. The jury rendered a special verdict and found for the plaintiff and the insurer, but against Otis, in the amount of $3,-500.00.[2] The facts are rather simple. The plaintiff claimed that on January 21, 1959, she entered one of the two elevators in the Warwick on the eleventh floor and pressed the first floor button. Thereupon, says plaintiff, the lights went off and the elevator plunged rapidly from the eleventh floor to a point between the eighth and ninth floors, where it came to a sudden halt causing her to be thrown to the floor and injured.

On this appeal, Otis complains principally of three alleged errors. First, it contends that the court erred in giving the following charge to the jury as to the duty of Otis to a passenger in the elevator:

"* * * Therefore, I charge you now as follows, and this charge does pertain to the Otis Elevator Company, who is to be considered as being in the same position as the owner of the Apartment Building, insofar as their direct connection with the elevator is concerned:

"The law states that while the owner of a passenger elevator operated in a business building for carrying passengers up and down may not be a carrier of passengers in the sense that he is bound to serve the public, yet this duty as to protecting the passengers in his elevator from danger is the same as that applicable for the carrier of passengers by other means, and he is bound to do all that human care, vigilance and foresight can reasonably suggest under the circumstances and, in view of the character of the mode of conveyance adopted, to guard against accidents and injuries resulting therefrom; and a failure to exercise such reasonable care will constitute negligence rendering him liable.

"I give you that charge particularly in connection with the preceding charge in which I referred to the amount of caution used by a prudent person varying with the particular circumstances and the probability of damages resulting therefrom. Those charges are being complementary one to the other."

In view of the contract to service the elevator and the understanding between Otis and the owner that no one was to perform any work or repairs on it except

---

1. The Warwick Apartments were owned by Winchester Apartments, Inc.

2. The case was submitted to the jury on special interrogatories as authorized by F.R.Civ.P. 49(b), and the verdict was in the following form:
   "In the matter of Fay Ann Seale versus Grain Dealers Mutual Insurance Company and Otis Elevator Company, Civil Action 9713, Division C: We the Jury find
   "Was Otis Elevator Company guilty of negligence? Answer: Yes.

   "If your answer to number 1 was in the affirmative, was that negligence a proximate cause of plaintiff's injury? Answer: Yes.
   "Was Winchester Apartments, Inc., the owner and operator of the Warwick Apartments guilty of negligence? Answer: No.
   "Was Plaintiff guilty of negligence? Answer: No.
   "What is the total amount of Plaintiff's damages proximately resulting from the accident? Answer: $3,500.00.
   Dated January 11, 1963. Signed Charles A. Dorhauer, Sr., Foreman."

Otis, we find no error in the charge, and consider it a correct statement of the law of Louisiana. Ross v. Sisters of Charity of Incarnate Word, 141 La. 601, 75 So. 425, L.R.A.1917F, 260 (1917); Vallette v. Maison Blanche Co., 29 So.2d 528 (L.App.Orl.1947).

■ Otis' second chief contention is that the court erred in charging the jury that the *res ipsa loquitur* doctrine applied to it. The rule does not apply, says Otis, because the Louisiana cases require that control of the offending device be in the defendant. We disagree. In Miller v. Otis, 154 So.2d 629 (La.Ct. of App.) (1963), the court did refuse to apply the doctrine in a case similar to this one. As we read that case, however, the refusal to apply the doctrine was not because of a lack of control by the defendant, but because of the real possibility, developed on the trial, that other forces could have caused the elevator malfunction. The court there stated:

> " * * * [T]he testimony of this mechanic and the other witnesses indicates that the handle of the governor was accessible and could have been tripped, purposely or accidentally, by any of the co-employees who happened to enter this control room. Since such factor outside the control of the defendant could also have caused the present accident, the doctrine of res ipsa loquitur does not apply."

The Louisiana case of Day v. National-U. S. Radiator Corp., (La.Ct. of App. 1959) 117 So.2d 104, indicates that "control" is no longer a decisive criterion for the application of the doctrine in that State:

> "Control by defendant appears no longer to be an absolute requirement provided the other factors usually required are present, chiefly among which are the absence of knowledge on the part of the injured party concerning the cause of the incident and the superior ability of defendant to explain the occurrence."

The court reasoned that if control is a prerequisite to the application of the doctrine, that in cases where the defendant is bound by contract with the party who does have actual control, to inspect, service and maintain, etc., the defendant also has control:

> "Assuming (for the sake of argument only) control of defendant over the instrument in question to be a necessity, it is apparent from the evidence the defendant architect was not without some measure of control had the duty of inspection and supervision been properly performed. Although immediate control and possession of the boiler and system was invested in the plumbing subcontractor, it was the duty of the architect, either personally or through the consulting engineer, to exercise such control and supervision of the system that its construction and completion fulfilled the contract plans and specifications. Failure of the architect to discharge the duty of control assumed and imposed by his contract with the owner cannot be asserted as an absence of control relieving the architect of the consequences of negligent omissions."

In Otis Elevator Co. v. Robinson, (5 Cir. 1961) 287 F.2d 62, involving facts strikingly similar to those here involved, we stated, "Proof by circumstantial evidence is not confined to the narrower limits of *res ipsa loquitur* which, as we have pointed out, ' * * * is simply a facet of the general law that verdicts may rest upon circumstantial evidence.'" See also Gulf Oil Corp. v. Griffith, (5 Cir. 1964) 330 F.2d 729.

■■ Otis' third major contention is that the court erred in refusing to grant its motion to dismiss for lack of jurisdictional amount. It is argued that plaintiff "was, to a legal certainty, never entitled to an award approaching the jurisdictional amount." The test as to whether the court should grant a motion

to dismiss for lack of jurisdictional amount was clearly stated by the Supreme Court in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845, in the following language:

"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." (emphasis supplied)

In the present case, plaintiff claimed damages in the amount of $50,000.00. On the trial, one doctor testified that he had performed a submucous resection on the plaintiff for a deviated septum. Another doctor testified on deposition that plaintiff was still in need of additional corrective surgery. Plaintiff testified that she continues to experience extensive pain and discomfort; that it hurts her to breathe cold air; and that her nose bleeds when she swims or when she stands over something warm such as a hot stove, or hot dishwater. She further stated that she can no longer wear sunglasses because of the nose injury. The jury decided that plaintiff had been injured to the extent of $3,500.00. We do not feel that the plaintiff alleged the

jurisdictional amount in bad faith, or that the complaint showed to a legal certainty that the claim was for less than $10,000.00.

The judgment is affirmed.