Katie R. CAMPBELL, wife of/ and Willie Campbell, Plaintiffs-Appellees,

and

International Insurance Company, Intervenor-Appellee,

v.

OTIS ELEVATOR COMPANY, Defendant-Appellant.

No. 85–3749.

United States Court of Appeals, Fifth Circuit.

Jan. 27, 1987.

Rehearing and Rehearing En Banc Denied March 2, 1987.

---

C. Edgar Cloutier, New Orleans, La., for defendant-appellant.

Allain F. Hardin, New Orleans, La., for Campbell.

Maria I. O'Byrne Stephenson, New Orleans, La., for Intern. Ins. Co.

Before GARZA, DAVIS, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

In this diversity case, the plaintiffs, Katie R. Campbell joined by her husband, Willie Campbell, were awarded damages from Otis Elevator Co. ("Otis") for the injuries Mrs. Campbell sustained when she attempted to board an elevator. Responding to Otis's points on appeal, we find error in the trial court's charge and therefore reverse and remand for a new trial.

## I. FACTS

In 1927, Otis installed a manually operated service elevator in the rear of the Pontchartrain Hotel in New Orleans. Fifty-four years later, in October, 1981, Otis contracted with the hotel to provide bimonthly inspections and to maintain the elevator as needed.

On April 16, 1983, the elevator car stopped and became stuck below the ground floor level in the elevator pit. This malfunction had occurred before. The elevator failed to contact a directional limit switch, which in normal operation would drop a directional relay, causing the brake to set and the car to stop level with the ground floor. Instead, the elevator continued to move downward until it touched a final limit switch which cut off its power completely until the final limit switch was manually overridden.

When this happened on April 16, the hotel's employees decided to take charge of the problem instead of calling Otis to correct it. The building engineer went to the elevator machinery room on the top floor of the hotel and manually overrode the final limit switch. He raised the elevator to the ground floor level. However, during the course of this operation, the hotel's elevator operator failed to close the doors of the elevator, creating a dangerous condition.

As chance would have it, Mrs. Campbell, a hotel employee, saw the open elevator doors and attempted to board. At that moment, the building engineer, thinking that the elevator was still stuck in the pit, again manipulated the switches causing the car to move and Mrs. Campbell first to be trapped between the floor of the elevator and the top of the elevator entry way and then to fall into the elevator shaft. Mrs. Campbell sustained serious injuries, including a ruptured disc and broken bones, which resulted in total disability and required surgery.

The Campbells' lawsuit pled claims in negligence and strict products liability. They maintained that had Otis properly performed its duties to repair, maintain, inspect, and warn of defects, the brakes would have functioned properly, the elevator would never have moved below the floor level, or the readjustment process would have been made safer, and the accident would not have occurred.

Otis, denying negligence or any defect in the elevator, contended that the accident occurred as a result of the negligent and improper operation of the elevator by the hotel employees and Mrs. Campbell's contributory negligence in boarding the elevator. A substantial judgment was entered on the jury verdict, which found Otis free from strict liability and attributed 75% negligence to the hotel, 25% to Otis, and none to Mrs. Campbell.

Otis contends on appeal that the district erred in its instructions to the jury on the principle of *res ipsa loquitur* and on the standard of care owed by Otis to the elevator passengers. Otis also challenges the trial court's refusal to grant motions for a directed verdict and J.N.O.V.

## II. JURY INSTRUCTIONS

In this diversity case, if a jury charge misstates substantive state law and thereby prejudicially misleads the jury, the judgment may be reversed. *McCullough v. Beech Aircraft Corp.*, 587 F.2d 754, 759 (5th Cir.1979); *see also Pierce v. Ramsey Winch Co.*, 753 F.2d 416 (5th Cir.1985); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2555, at 651–52 (1971). Even though state substantive law dictates the content of the charge, federal law governs the phrasing of the instructions and the sufficiency of the evidence to support the charge. *Kicklighter v. Nails By Jannee, Inc.*, 616 F.2d 734, 740 (5th Cir.1980). We shall endeavor to determine whether the particular instructions Otis finds objectionable were prejudicially erroneous under these standards.

### A. Res Ipsa Loquitur

The district court instructed the jury that it could consider the doctrine of *res ipsa loquitur* in making its determination as to Otis's negligence. Its charge was founded

on our previous decision in *Otis Elevator Co. v. Seale*, 334 F.2d 928 (5th Cir.1964). Otis argues the facts in this case do not warrant application of the doctrine. Determining whether the evidence supports the trial court's instruction requires a recapitulation of Louisiana law.

In Louisiana, *res ipsa loquitur* is a rule of circumstantial evidence. Under this rule, negligence may be presumed on the part of the defendant if facts indicate the defendant's negligence to be the probable cause of a plaintiff's injury. However, the principle will be applied only if there is no other plausible explanation for the accident. *Boudreaux v. American Insurance Co.*, 262 La. 721, 264 So.2d 621, 627–28 (1972). The criteria which permit application of the *res ipsa loquitur* principle are: (1) the circumstances surrounding the accident must create a presumption of negligence on the part of the defendant; (2) control and management of the instrumentality which caused the accident must have been vested exclusively in the defendant; and (3) the plaintiff's position must be such that he is unable to explain the circumstances which caused the accident, while the defendant possesses knowledge of, or has the ability to obtain information regarding the cause of the accident. *Bianchini v. Humble Pipe Line Co.*, 480 F.2d 251, 255 (5th Cir.1973); *Boudreaux*, 264 So.2d at 627–28.

In *Seale*, relied upon by the district court, we upheld a *res ipsa loquitur* charge against Otis, which was the manufacturer, installer, and maintenance contractor of the injurious elevator. *Seale* sought to clarify the "exclusive control and management" element of the doctrine, emphasizing that a defendant need not have sole physical possession and control of an instrumentality as a predicate to *res ipsa loquitur*. *See Day v. National—U.S. Radiator Corp.*, 117 So.2d 104, 117 (La.App. 1st Cir.1959). In *Seale*, Otis had an understanding with the building owner that it, *and no one else*, was to perform any work or repairs on the elevator. There is no indication in the case that anyone other than Otis managed the elevator. Consequently, for purposes of *res ipsa loquitur*, the defendant in *Seale* had possession and control over the elevator, albeit, not physical possession; there was no other force which could have caused the accident.

The *Seale* panel distinguished *Miller v. Otis Elevator Co.*, 154 So.2d 629 (La.App. 3d Cir.1963). The court in *Miller* refused to apply the principle of *res ipsa loquitur* where there was evidence that employees other than those of the defendant could have tampered with the elevator and thus caused the malfunction which resulted in the accident. Later Louisiana cases have followed *Miller* and refused to apply the doctrine where the plaintiff was unable to prove freedom from fault on the part of any and all who may have had access to or some degree of control over the instrumentality.[1]

■ The Campbells wholly failed to prove freedom from fault "on the part of all through whose hands the instrumentality passed." The hotel's employee manually manipulated the electrical contacts to reactivate the stuck elevator. Moreover, hotel employees failed to ensure that the elevator's doors were closed during this operation. In light of the at least joint responsibility of the hotel for the accident, *Seale* does not apply because the second element of *res ipsa loquitur* in Louisiana—control and management of the instrumentality by Otis—was not satisfied.

**1.** *Boudreaux v. Am. Ins. Co.*, 262 La. 721, 264 So.2d 621, 628–29 (1972) (the principle of *res ipsa loquitur* is not applicable if a cause, other than the defendant's negligence, could be inferred as reasonably as such negligence); *Toussant v. Guice*, 414 So.2d 850, 854 (La.App. 4th Cir.1982) (same); *see also Plunkett v. United*

*Elec. Serv.* 214 La. 145, 36 So.2d 704, 709 (1948) (exclusive possession and control element of *res ipsa loquitur* is not required where the plaintiff has proven "freedom of fault on the part of all through whose hands the instrumentality passed after it left the defendant." *Id.*).

■ Not only was there "no rational basis in the evidence from which the jury could find the prerequisite elements of the doctrine," [2] but it is also certain that the *res ipsa loquitur* instruction misled or confused the jury to the prejudice of Otis. Inasmuch as that instruction shifts the burden of proof to the defendant, requiring him to rebut a presumption of negligence, it lessens the plaintiff's burden of proof. The erroneous submission of the instruction therefore warrants a new trial.

## B. Standard of Care

The jury was instructed on Otis's legal duty of care as follows:

Otis had a duty to protect the passengers in the Otis elevator in question from danger. This duty is similar to that owed by common carriers to their passengers. Otis is bound to do all that human care, vigilance and foresight can reasonably suggest under the circumstances and in view of the character and the mode of conveyance adopted, to guard against accident and injuries resulting therefrom; and a failure to exer-

cise such *high degree of care* shall constitute negligence rendering it liable.
(emphasis added).

This instruction derives from *Otis Elevator Co. v. Seale*, 334 F.2d 928, 929 (5th Cir.1964). In *Seale*, the trial court more or less instructed the jury that Otis, as the manufacturer, installer, and maintenance contractor of the elevator, had the same duty to the elevator passengers as the elevator owner who, like a common carrier, is obliged to exercise a high degree of care toward passengers.[3]

■ Otis argues that the district court in this case misinterpreted and misapplied the holding in *Seale*, or in the alternative, that the holding in *Seale* is wrong. *Seale* was not incorrect, and in any event this panel could not overrule prior precedent within our circuit even if we believed it wrong. We do find, however, that *Seale* is not controlling. *Seale*, dealing with the liability of an elevator maintenance contractor who had exclusive responsibility for the elevator, relied upon Louisiana cases which held elevator owners to a high standard of care.[4] Later Louisiana case law has affirmed this standard as to elevator owners [5] but has not automatically applied the

**2.** *Kicklighter v. Nails by Jannee, Inc.,* 616 F.2d 734, 740 (5th Cir.1980).

**3.** The charge in *Seale* stated:

[T]his charge does pertain to the Otis Elevator Company, who is to be considered as being in the same position as the owner of the Apartment Building, insofar as their direct connection with the elevator is concerned:

The law states that while the owner of a passenger elevator operated in a business building for carrying passengers up and down may not be a carrier of passengers in the sense that he is bound to serve the public, yet this duty as to protecting the passengers in his elevator from danger is the same as that applicable for the carrier of passengers by other means, and he is bound to do all that human care, vigilance and foresight can reasonably suggest under the circumstances and, in view of the mode of conveyance adopted, to guard against accidents and injuries resulting therefrom; and a failure to exercise such reasonable care will constitute negligence rendering him liable.

I give you that charge particularly in connection with the preceding charge in which I refer to the amount of caution used by a prudent person bearing with the particular circumstances and the probability of damages

resulting therefrom. Those charges are being complimentary one to the other.
*Seale,* 334 F.2d at 929.

Note the internal inconsistencies in this charge, since one portion of it refers to "reasonable care" as opposed to "high degree of care" and another section refers to "the amount of caution used by a prudent person varying with the particular circumstances...." *Id.*

**4.** *Ross v. Sisters of Charity of Incarnate Word,* 141 La. 601, 75 So. 425 (1917); *Vallette v. Maison Blanche Co.,* 29 So.2d 528 (L.App.Orl.1947).

**5.** *Buckel v. Maison Blanche Corp.,* 379 So.2d 849, 850 (La.App. 4th Cir.1980), *vacated,* 385 So.2d 782 (La.1980), *owner* who operates escalator has high duty of care to escalator passengers similar to the high duty imposed upon common carriers. *Wolverton v. City Stores Co.,* 363 So.2d 1321 (La.App. 4th Cir.1978) (cites with approval the charge given by the court to the jury in *Seale* and labels the charge "a correct statement of Louisiana law." This case, however, deals with an elevator *owner's* liability. *Id.* at 1325); *Cannon v. Holmes,* 274 So.2d 799 (La.App. 4th Cir. 1973), writ denied 277 So.2d 677 (La.1973), (store *owner* owes escalator passengers a standard of care similar to that imposed upon common carriers, *i.e.,* a high duty of care). Since

same standard to those who maintain or repair elevators or, in some instances, escalators. In *Austin v. Otis Elevator Co.*, 336 So.2d 914, 918 (La.App. 4th Cir.1976), for example, the court found it necessary for the plaintiffs to prove only that the elevator maintenance contractor "failed to exercise reasonable care in performing services under its maintenance contract...." *Id.* The Campbells seek to distinguish *Austin* because the plaintiff was an elevator manufacturer which had no right to assert a high degree of care when seeking contribution from the maintenance contractor. We are unpersuaded. The *Austin* court's conclusion parallels that of most of the other Louisiana Courts of Appeals, in requiring a maintenance contractor, like any repairer, only to exercise reasonable care under the circumstances.[6]

This Circuit has previously construed Louisiana law to hold a repairer of jet aircraft to a standard of reasonable care. *Winans v. Rockwell International Corp.*, 705 F.2d 1449, 1454 (5th Cir.1983). *Winans* in turn distinguished "those who 'deal in or handle dangerous substances or agencies such as explosives, electricity, gas, fire arms, combustibles and fire works'" as bearing an extraordinary standard of care under Louisiana law. *Id.; Royal Insur-*ance Co. v. Fidelity & Casualty Co. of New York, 256 So.2d 352, 355 (La.App. 1st Cir.1971). Since a repairer is neither a common carrier nor "dealer or handler in dangerous substances, ... working directly with a dangerous substance," *Winans*, 705 F.2d at 1454, it is held only to a duty of reasonable care. Whether the object of the repairs is a jet aircraft, automobile, escalator or elevator should make no difference.

■ This district court's instruction, which erroneously attributed a common carrier's high duty of care to Otis as a mere elevator maintenance contractor, was erroneous. The jury was prejudicially misled by this error.

## III. MOTIONS FOR DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT

Observing that the jury verdict was based on its alleged negligence in (a) failing to warn the hotel of the dangers of imprudent elevator re-start attempts or (b) failing to maintain the elevator properly, Otis contends that it had no duty in regard to the first ground of negligence and that there was no causal connection between the second ground and Mrs. Campbell's

our decision was rendered in *Seale* only one Louisiana case has held a defendant elevator manufacturer, installer, and maintenance contractor to a high degree of care. That case, *Tarantino v. City Stores Co.*, 278 So.2d 149 (La. App. 4th Cir.1973), writ denied 281 So.2d 741 (La.1973) dealt with a defendant who, unlike the defendant in the instant case, had exclusive control over the manufacture, installation, and maintenance of the "offending escalator" and in essence stepped into the shoes of the elevator owner. *Tarantino* falls squarely within the *Seale* holding. The *Austin* case, discussed in text, was later decided by the *Tarantino* court.

**6.** Each of the Louisiana Circuits that has addressed a repairer's legal duty of care, has approved an ordinary care standard. *See Rowell v. Carter Mobile Homes, Inc.*, 482 So.2d 640, 645 (La.App. 1st Cir.1984), writ granted 485 So.2d 56 (La.1986) ("A repairman owes a duty of reasonable care, inspection and repair work when an automobile is brought to him for repairs." *Id.*); *Spillers v. Montgomery Ward & Co., Inc.*, 282 So.2d 546, 552 (La.App. 2d Cir.1973), *modified on other grounds*, 294 So.2d 803 (La.1974) ("The legal duty ... relating to the repair and servic-ing of motor vehicles, ... is to use reasonable care...."; *Williams v. La. Mach. Co.*, 387 So.2d 8, 12 (La.App. 3rd Cir.1980) ("A repairer has a duty, arising in tort, to exercise reasonable care and skill in the design and repair of the object to be repaired commensurate with the risk of harm flowing from the normal use of that product." *Id.; see also Todd Shipyards Corp. v. Turbine Serv., Inc.*, 467 F.Supp. 1257, 1288 (E.D.La. 1978), *modified and rev'd in part on other grounds*, 674 F.2d 401 (5th Cir.1982), *cert. denied*, 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982) ("A repairer has a duty to exercise reasonable skill and care in the design and repair of the object to be repaired, commensurate with the risk of harm flowing from normal use of that product." *Id.*, citing Restatement (Second) of Torts § 404 (1965)). *Compare, e.g., Marquez v. City Stores Co.*, 371 So.2d 810, 814 (La.1979), where the Louisiana Supreme Court, in determining a maintenance contractor's third party liability to the elevator owner, never indicated that the contractor's duty of care was anything other than "ordinary" or "reasonable."

injury. Guided by the familiar principle of *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc) we reject these arguments in behalf of granting Otis's motions for directed verdict and J.N.O.V.

■ Otis points to the testimony of the hotel's building engineer, who stated that he was aware of the dangers inherent in putting the elevator back in operation by overriding safety circuits and manipulating relays. Moreover, he had instructed the employees on the procedures to follow, including closing the hall door to the elevator. Otis asserts that there can be no duty to warn of a hazard which is known or obvious to the beneficiary of the warning. *See, e.g., Winterrowd v. Travelers Indemnity Co.,* 462 So.2d 639, 642 (La.1985); *Ducote v. Liberty Mutual Insurance Co.,* 451 So.2d 1211, 1213 (La.App. 4th Cir.1984), writ denied 457 So.2d 15 (1984). Even if the duty to warn did not arise because hotel personnel were "sophisticated users" of the elevator, *see American Mutual Liability Insurance Co. v. Firestone Tire and Rubber Co.,* 799 F.2d 993, 994 (5th Cir. 1986), Otis nevertheless cannot prevail because it construes the Campbells' case too narrowly. The Campbells also contended that Otis failed to properly instruct, warn, and assist the Pontchartrain in developing a safe procedure to raise the elevator from the pit. Otis knew before Mrs. Campbell's accident that the hotel employees were prone to conduct this procedure to save time. After the accident, the hotel installed a telephone connecting the eleventh floor maintenance room with the elevator and posted written instructions on the proper re-start procedure. Evidence thus supported submission of this aspect of potential negligence to the jury.

■ The alleged lack of proximate cause between Otis's defective maintenance and Mrs. Campbell's accident is also a fatally flawed argument. Otis urges that the initial, "passive" negligence of a defendant may not be the proximate cause of a plaintiff's injuries when such negligence becomes too remote, in comparison with later "active" negligence, to be a contributing cause of the accident. As pointed out by the Campbells, the Louisiana Supreme Court has disfavored formulations of its law that relieve "all but the last wrongdoer of liability to an innocent victim in torts involving intervening negligence." *Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co.,* 242 La. 471, 137 So.2d 298, 304 (1962). Moreover, the regime of comparative negligence considerably weakens the force of Otis's argument concerning legal "remoteness." The jury held Otis only 25% negligent in this case and in its wisdom implicitly allocated fault according to its perception of the relative causation by Otis. To Otis's misfortune, it might have escaped liability under Louisiana law, despite its low proportional negligence, only if the jury found Mrs. Campbell more negligent than Otis. Here, evidence supported the jury's finding that Otis's negligence was a significant contributing cause of the injury.

## IV. CONCLUSION

Because the district court erred in charging the jury on the principle of *res ipsa loquitur* and the appropriate standard of care, we REVERSE and REMAND for a new trial consistent with the decision of this court.