582 So.2d 341 (1991)
Terry COLEMAN
v.
OTIS ELEVATOR COMPANY, United Technologies Corporation and Cigna Insurance Company.
No. 90-CA-1695.
Court of Appeal of Louisiana, Fourth Circuit.
June 13, 1991.
*342 John K. Leach, Christovich & Kearney, New Orleans, for Otis Elevator Co. defendant-appellant.
Irwin R. Sanders, Metairie, for Terry Coleman plaintiff-appellee.
Before SCHOTT, C.J., and BARRY, BYRNES, CIACCIO and WARD, JJ.
WARD, Judge.
OTIS Elevator Company (OTIS) appeals a judgment awarding damages to Terry Coleman for injuries received when an elevator in Charity Hospital in New Orleans came to a sudden stop between floors.
On December 31, 1987, after visiting a patient, Mr. Coleman entered the No. 2 passenger elevator on the seventh floor to get to the first floor to leave the hospital. Coleman testified that the elevator proceeded to the first floor level when the elevator doors failed to open. Thereafter, the elevator went back up to the fifth floor and continued to run up and down with the doors closed. Meanwhile, Coleman continued to press the "floor" and "open" door buttons. When the elevator eventually stopped on the second floor, Coleman rang the emergency bell. Ms. Vivian Thomas, a Charity employee, attempted to open the doors but was unsuccessful. Then the elevator rapidly dropped to the basement level and came to an abrupt stop 2 ½ to 3 feet below the basement level. Coleman went down on one knee. He was assisted out of the elevator by Mr. Terry Bode, an OTIS employee, who brought Coleman to the desk. Mr. Coleman filled out a report and was examined in the emergency room where x-rays were taken. When the X-rays indicated no physiological damage, hospital personnel released Coleman. However, Mr. Coleman was in pain and began treatment with Dr. Joseph P. Braud on January 7, 1988. He was treated for a contusion to the lumbosacral spine until he was discharged on May 5, 1988.
On January 31, 1989 he filed suit against OTIS Elevator Company, United Technologies Corporation, and Cigna Insurance Company based on a claim of negligence. After a bench trial on June 27, 1990, the District Court rendered judgment in favor of Mr. Coleman. The court ordered OTIS to pay fees in the amount of $300 for each expert. OTIS appeals that judgment.
On appeal, Otis contends that the trial court erred by: (1) allowing Mr. Raymond Curtis Hollingsworth to testify as plaintiff's expert witness; (2) finding that the elevator was inadequately maintained; and (3) shifting the burden to OTIS to prove proper maintenance procedures and exercise of reasonable care.
OTIS's counsel objected to the testimony of Mr. Hollingsworth because he was not advised of this expert witness until just prior to trial. OTIS claims that it was prejudiced because it was not provided the opportunity to depose Mr. Hollingsworth or otherwise obtain information about his anticipated testimony. The District Court overruled the objection because OTIS failed either to answer interrogatories until shortly before trial, or to respond to a motion to produce documents until after the court ordered production.
The District Court is vested with much discretion in discovery sanctions and the exclusion or admission of witnesses' testimony at trial. Orrill v. Ram Rod Trucking, 557 So.2d 384 (La.App. 4th Cir.1990); Llorence v. Natchitoches Parish School Bd., 529 So.2d 479 (La.App. 3rd Cir.1988), writ denied 532 So.2d 176 (La.1988). Moreover, error, if any, in allowing Mr. Hollingsworth to testify, was harmless in light of the testimony of Mr. Terry Bode, an employee for OTIS in December, 1987, and Mr. Vernon Von Bieberstein, an elevator maintenance and installation expert for OTIS.
Their testimony is essentially the same as that of Mr. Hollingsworth. All three witnesses testified that an integral part of the elevator control system failed (the PPT) *343 and that there is no way to predict when or if there will ever be a failure. Moreover, the PPT is current, state of the art, technology, and frequent replacements of this device will not guaranty its effectiveness.
OTIS contends that the trial court erred in shifting the burden of proof to defendant to show that it exercised reasonable care in maintaining the elevator. Mr. Coleman claims that OTIS, as designer, manufacturer, installer and maintenance contractor of the elevator in question, had total control over the elevator even though the elevator is owned by Charity Hospital.
We agree. The evidence produced by Mr. Coleman proved that OTIS had the exclusive care and custody of the elevator and is therefore strictly liable for any defect. LSAC.C. art. 2317; Loescher v. Parr, 324 So.2d 441 (La.1975).
OTIS argues Wilson v. Hibernia National Bank, 517 So.2d 1206 (La.App. 4th Cir.1987), writ denied 520 So.2d 425 (La. 1988) is applicable. In that case, this Court affirmed the District Court's directed verdict dismissing plaintiff's cause of action when the evidence indicated that the elevator failed because a component with a non-determinable life span failed.
We factually distinguish Wilson, supra, and hold that strict liability applies in the present case because Mr. Coleman has shown that OTIS had "garde" of the elevators, whereas Hibernia had ownership as well as "garde" in Wilson. In the present case, OTIS hired an employee to work on the premises of Charity Hospital 40 hours a week solely to maintain the 48 elevators; in the Wilson case, Hibernia used OTIS's services on a "as needed" basis. Charity Hospital's contract with OTIS required OTIS to maintain and upgrade its elevator system of 48 elevators. This difference is critical, and in this case it is reasonable to find that OTIS had complete care, custody, and control of the elevators on Charity's premises.
OTIS also argues that Brown v. OTIS Elevator Co., 535 So.2d 525 (La.App. 4th Cir.1989) is applicable. The Brown case involved a plaintiff who, while confined in the elevator, received no serious injuries. Furthermore, no defect in the elevator was found, and Brown's injuries allegedly were attributable to her child pulling the emergency switch. This Court stated in Brown that the record "does not establish that OTIS had exclusive custody and control of the elevator."
The Louisiana Supreme Court affirmed this Court's ruling in Socorro v. Orleans Levee Board, 568 So.2d 1068 (La.1990). In Socorro, the meaning of "garde" was addressed and this Court held that "garde" may rest with one who has supervision and control of the thing, one who need not be the owner.
... The term `custody' has its origin in the French term `garde.' Ross v. La Coste de Monterville, 502 So.2d 1026 (La.1987). `According to the French understanding, garde is the obligation imposed by law on the proprietor of a thing or on the one who avails himself of it to prevent the thing from causing damages to other.' Id. at 1030. Although ownership may indeed evidence the `garde' required for Article 2317, this guardianship may also rest with one who is not the owner.
The Supreme Court has defined Article 2317 "custody" as:
The things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them and to draw some kind of benefit from them. This relationship would ordinarily be associated with ownership but the guardianship will also belong to the bailee, the lessee, the usufructuary, the borrower for use and the repairman, among others ... Loescher v. Parr, 324 So.2d 441, 449 n. 7 (La.1975).
The question of "garde" is largely one of fact and not of law. The trial court held OTIS to the "reasonable care" standard that is applied to those who maintain and repair machinery. In the present case, because OTIS failed to prove that it had exercised proper maintenance and reasonable care, the District Court found in favor of Mr. Coleman.
*344 We hold OTIS liable on the theory of strict liability and affirm the district court for the foregoing reasons.
AFFIRMED.
BYRNES, Judge, dissenting with reasons.
A theory of strict liability under LSA.C.C. Art. 2317 does not apply because plaintiff did not prove that the thing which caused the damage was in the care or custody of the defendant. Loescher v. Parr, 324 So.2d 441 (La.1975). That Otis had a contract to service the elevators is not sufficient to establish that this elevator was under Otis's care or custody when the elevator failed. Brown v. Otis Elevator Co., 535 So.2d 525 (La.App. 4th Cir.1988).
In Louisiana res ipsa loquitur is a rule of circumstantial evidence which may be used to shift the burden of proof to defendant when:
(1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant;
(2) the defendant had exclusive control over the thing causing the injury; and
(3) the circumstances are such that the only reasonable and fair conclusion is that the accident resulted from a breach of the defendant's duty. Brown v. Otis Elevator Co., id., 535 So.2d at 527.
Before the doctrine becomes applicable, the plaintiff must establish facts which warrant the inference that the injury would not have occurred absent defendant's negligence so that the initial burden of proof is on the plaintiff. Wilson v. Hibernia Nat. Bank, 517 So.2d 1206 (La.App. 4th Cir. 1987), writ denied, 520 So.2d 425 (La.1988). The evidence adduced by plaintiff did not furnish a basis for the application of res ipsa loquitur. The evidence did not establish that the elevator and its components were under the exclusive control of Otis when it stalled.
Negligence is not presumed and the burden of proving negligence by a preponderance of the evidence rests on the party alleging it. Angelo Pavone Enterprises, Inc. v. South Cent. Bell Telephone Co., 459 So.2d 1223 (La.App. 4th Cir.1984) writ granted 462 So.2d 646 (La.1985), cause dismissed 463 So.2d 1310 (La.1985). It is only after the initial burden of establishing a prima facia case of negligence has been met by the plaintiff, that the burden may be shifted to the defendant to exonerate itself from liability. Edelman Systems, Inc. v. Capital GMC, Inc., 345 So.2d 99 (La.App. 1st Cir.1977), writ denied, 347 So.2d 250 (La.1977). The court cannot presume negligence on the part of Otis and improperly shifted the burden of proof to the defendant.
Under a theory of negligence pursuant to LSA-C.C. Art. 2315, plaintiff must prove defendant had a duty to observe a certain standard of care toward plaintiff; defendant breached such duty by falling below that standard; defendant's breach was the cause in fact of the accident; and the harm which actually occurred was the sort of harm that defendant's legal duty was designed to prevent. Gresham v. Davenport, 537 So.2d 1144 (La.1989); Mergen v. Piper Aircraft Corp., 524 So.2d 1348 (La.App. 1st Cir.1988), writ denied, 532 So.2d 154, 532 So.2d 155 and 532 So.2d 156 (La.1988). The elevator owner, like a common carrier, is obliged to exercise a high degree of care toward passengers. Campbell v. Otis Elevator Co., 808 F.2d 429, 433 (5th Cir. (La.) 1987), rehearing denied, Campbell, International Ins. Co. v. Otis Elevator, 814 F.2d 658 (5th Cir. (La.) 1987). In Louisiana the standard for elevator owners does not apply automatically to those who maintain or repair elevators. Campbell, id., 808 F.2d at 433-434. A maintenance contractor, like any repairer, must exercise reasonable care under the circumstances. Campbell, id., 808 F.2d at 434; Brown, id., 535 So.2d at 527; Wilson, id., 517 So.2d at 1208.
Mr. Terry Bode, employed as an adjuster by Otis Elevator Company, testified that he assisted the plaintiff out of the No. 2 elevator and repaired the elevator by replacing the primary position transducer (P.P.T.), which is a sealed solid-state component which monitors and controls the position of *345 the elevator car. He explained that the P.P.T. is like a lightbulb in that it is impossible to check a P.P.T. to determine if it is about to fail.
Mr. Raymond C. Hollingsworth, plaintiff's expert in regard to elevators and elevator functions, agreed that the P.P.T. will suddenly fail without warning. In his Reasons for Judgment, the trial judge noted that the Otis repair records did not reflect that the P.P.T. was replaced on December 31, 1987. The trial judge found that Otis's records did not prove proper maintenance and reasonable care. However, with the burden of proof on the plaintiff, we cannot find that lack of a written record of replacement of the P.P.T. shows that defendant was negligent.
Mr. Hollingsworth asserted that the malfunction could have been observed by connecting an Otis Maintenance Tool (OMT) testing device to get a reading of various faults on November 3 or November 11, 1987, when the Otis records show that the No. 2 elevator had previously been checked or repaired. However, Otis's expert, Mr. Von Bieberstein, noted that if the P.P.T. had been malfunctioning on November 3 or 11, the elevator would not have returned to normal operation. He testified that an OMT test would not have diagnosed the malfunction of the P.P.T. and that failure of the P.P.T. on December 31, 1987 was unforeseeable.
Mr. Bode testified that maintenance work was performed weekly on each elevator and callback and repair reports showed when the elevator was repaired. Various repair reports on various dates show that Otis repaired elevator malfunctions when they occurred. Plaintiff failed to prove that Otis breached its duty to exercise reasonable care in performance of services on the elevator.
SCHOTT, Chief Judge, dissenting:
I agree entirely with the dissent of Judge Byrnes.
With all due respect to my colleagues in the majority, I do not believe the case can be distinguished from Wilson v. Hibernia National Bank, 517 So.2d 1206 (La.App. 4th Cir.1987), writ denied 520 So.2d 425 (1988). I fail to see how the building owner, by entering into a contract for the servicing of the elevators, can be said to have transferred the "garde" of the elevators to the contractor; nor can I see how the contractor has assumed the "garde" by undertaking the limited task of providing service or maintenance.
Garde is associated with ownership. The theory is that the owner is strictly liable for defects in the thing he owns. Strict liability relieves the plaintiff of proving actual knowledge of the defect on the part of the owner. Garde may be transferred to a bailee, lessee, usufructuary, borrower for use or repairman according to n. 7 in Loescher v. Parr, 324 So.2d 441, 449 (La. 1975), but it seems to me that this occurs only when the repairman assumes complete custody of the thing and not a limited responsibility for servicing the thing. In the present case the building owner probably continued to be responsible for cleaning the elevator and maintaining the carpets. The result of the majority opinion is to divide garde or custody between the building owner and the elevator contractor so that the former remains strictly liable under some circumstances, while the latter is strictly liable under others. I respectfully submit that there is no support for this position.
The balance of the footnote partially quoted by my colleagues is as follows:
... It [the garde] will not belong to the agent or the mandatory, the employee or the servant, or to anyone else for whom there is a responsible principal. The owner may transfer the guardianship by transferring the thing to another who will bear such a relationship to the thing as to himself have the care of it. He may also lose the care of this thing, principally by the theft of the thing. (emphasis mine)
Thus, the garde does not belong to the elevator contractor because the building owner is a "responsible principal" and because the transfer of the thing to the elevator contractor did not vest in the contractor the same relationship toward the thing as *346 the building owner has. The elevator contractor's relationship to the thing is the narrow responsibility for servicing the elevator; it is not the same relationship as the owner has.
The theory of strict liability under LSA-C.C. art. 2317 is clear. When a person enters a building and is injured because of a defect in an elevator he can recover damages against the owner even though the owner was unaware of the defect. In the present case the plaintiff was entitled to full recovery against the building owner. Of course, the building owner may have a right of indemnity against the elevator contractor. But the plaintiff is not entitled to recover against the elevator contractor without proving negligence. That has been the consistent law of this circuit and it should be applied in this case.
With the deepest respect for my colleagues in the majority, I submit that their opinion causes instability in our jurisprudence and uncertainty among parties and attorneys as to the mutual responsibility and legal liability of elevator service or maintenance contractors vis a vis building owners.