JsPETTIGREW, J.
This tort action arises out of injuries allegedly sustained by plaintiff, Hilton King, while riding as a passenger in an elevator maintained by defendant, Montgomery Elevator Company. The jury found no liability on the part of Montgomery Elevator Company, and a judgment was entered by the trial court dismissing plaintiffs claims. Plaintiff has appealed this judgment. For the reasons set forth below, we affirm.
FACTS AND PROCEDURAL HISTORY
On December 9, 1991, plaintiff, Hilton King, was allegedly injured while riding as a passenger in an elevator that malfunctioned. According to Mr. King, he was attempting to go to the third floor of the IBM building when “[i]t [the elevator] stopped and fell,” causing him to fall to the floor. At the time Of this incident, the elevators located in the IBM building were maintained by Montgomery Elevator Company (“Montgomery”).
As a result of this incident, Mr. King and his wife, Patricia King, individually and on behalf of their two minor daughters, filed suit naming as defendants Montgomery, Mr. Gerald Robert, a service repair technician for Montgomery, and National Union Fire Insurance Company, as liability insurer of Montgomery. Following a trial by jury, verdict was rendered in favor of Montgomery on the issue of liability.[1] Subsequently, the trial *1151 court signed a judgment in accordance with the jury’s verdict dismissing Mr. King’s claims with prejudice. It is from this adverse judgment that Mr. King now appeals, assigning the following specifications of error:
1. The trial court erred in instructing the jury concerning the standard of conduct applicable to the actions of Gerald Robert and Montgomery Elevator Company.
2. The erroneous instruction to the jury concerning the standard of conduct applicable to the defendants prejudiced the Appellants.
3. The jury committed manifest error and was clearly wrong in finding that Gerald Robert and Montgomery Elevator Company did not breach their duty as elevator maintenance contractors.
|44. The jury committed manifest error in failing to award reasonable damages to Hilton King as the result of his injuries on December 9,1991.
5. Counsel for defendants improperly argued in closing argument that there was an issue as to whether the elevator involved malfunctioned on December 9, 1991, when it was admitted in the pretrial order that the incident occurred.
We note that with regard to the last assignment of error, there is no transcript of closing arguments in the record. Thus, as there is no “suitable reference” to the record, we will disregard this assignment of error pursuant to Uniform Rule 2-12.4. Our discussion of the remaining issues follows.
LAW AND ANALYSIS
Jury Instructions
Mr. King contends that the trial court incorrectly instructed the jury regarding the standard of care applicable to an elevator maintenance company and that this “erroneous instruction” to the jury prejudiced his case. Mr. King urges that the “appropriate standard of care applicable to an elevator maintenance company is that of the highest standard of care, such as that standard applicable to a common carrier.”
The trial court instructed the jury that “[a]n elevator repair [sic] is not required to exercise the highest degree of care but rather the repair [sic] must only exercise reasonable care in the performance of services under its contract with the building owner.” Counsel for Mr. King timely objected to the jury instruction, thus preserving his right to appeal this issue. La.Code Civ. P. art. 1793; See also Johnson v. Terrebonne Parish Sheriff’s Office, 95-1180, p. 8 (La.App. 1 Cir. 2/23/96), 669 So.2d 577, 582, writ denied, 96-0727 (La.4/26/96), 672 So.2d 907.
Jury instructions must adequately reflect the law as it pertains to the facts and issues presented. Furthermore, the adequacy of jury instructions must be determined in light of the jury instructions as a whole. Mitchell v. Fire and Casualty Insurance Company of Connecticut, 540 So.2d 352, 356 (La.App. 1 Cir.), writ denied, 541 So.2d 1390 (La.1989). When the instructions are found to be proper, the judgment appealed from should only be reversed for manifest error. On the other hand, if the | ginstructions are improper or inadequate, an appellate court is required to reach its own factual determination without regard to the manifest error rule. Id.
The question of what is the appropriate standard of care applicable to an elevator maintenance company is res nova in this court. In Spott v. Otis Elevator Company, 601 So.2d 1355, 1362 (La.1992) and Rosell v. ESCO, 549 So.2d 840, 843 n. 1 (La.1989), the Louisiana Supreme Court pretermitted this very issue. In both cases, the court noted that the question need not be answered because under either standard, the result would be the same. In Rosell, the court recognized that while there, are a “number of authorities within and outside our state” that support the position that an elevator company need only exercise reasonable care in the performance of its services, there is also “considerable well reasoned authority” in support of the proposition that an elevator company should be held to a higher degree of care. Rosell, 549 So.2d at 843 n. 1.
Although the Louisiana Supreme Court has never directly ruled on this issue, the Louisiana Fourth Circuit Court of Appeal *1152 has definitively held that an elevator repairer is not required to exercise the highest degree oficare. Rather, to prove negligence in such cases, plaintiffs have the burden to show that the elevator repairer breached its duty to exercise reasonable care in the performance of its maintenance contract, and that this conduct caused the resulting injury. See Poree v. Dover Corporation, 97-2332, p. 2 (La.App. 4 Cir. 11/19/97), 703 So.2d 150, 151; Ledet v. Montgomery Elevator Co., 94-0411, p. 3 (La.App. 4 Cir. 10/13/94), 644 So.2d 1075, 1077, writ denied, 94-2796 (La.1/27/95), 649 So.2d 384.
In the instant case, Mr. King argues that a higher degree of care, such as that applied to a common carrier, should apply because an improperly maintained elevator can become a dangerous instrumentality. He cites Rosell as authority for this argument. As previously indicated, the court in Rosell pretermitted this issue. Mr. King does not specifically argue the application of La. Civ.Code art. 2317.[2] However, 1 Rosell does refer to a line of cases that stand for such a proposition, one of these cases being Otis. Elevator Company v. Seale, 334 F.2d 928 (5th Cir.1964).
In Otis Elevator Company, the court applied a standard of care comparable to one that would apply to the owner of á building because Otis had the exclusive control and “garde” of the elevator. This is not the same fact scenario that we have in the instant case. Here, Montgomery does not own the elevator involved, nor does it have exclusive “garde” of the elevator. Montgomery has a maintenance and service contract that requires it to service the elevator on a regular basis and to repair it when problems develop.
This court has not specifically ruled on this precise issue, but, as cited in Rosell, this court has previously applied the reasonable care standard to an elevator maintenance company in the performance of its services. See Funderburk v. Montgomery Elevator Company, 358 So.2d 993 (La.App. 1 Cir.1978).
We agree with this reasoning and conclude that when an elevator maintenance company is neither the owner of the elevator nor has exclusive “garde” of the elevator, it must exercise reasonable care in the performance of its services. Thus, considering the jury instructions given by the trial court in the instant case as a whole, we find that they adequately reflect the law as it pertains to the facts and issues presented. See Mitchell, supra. Thus, assignments of error one and two are without merit.
Negligence of Montgomery
Mr. King asserts on appeal that the jury’s verdict finding no negligence on the part of Montgomery was manifestly erroneous. This court has previously recognized the well-settled principle that once the applicable standards of care are established, negligence is a question of fact to be determined by the trier of fact. Negligence must be determined on a case by case basis according to the particular facts and circumstances therein. Schoonmaker v. Capital Towing Company, 512 So.2d 480, 484 (La.App. 1 Cir.), writ denied, 514 So.2d 458 (La.1987). These factual determinations should not be disturbed on appeal absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). Further, where factual findings are |7based on the credibility of witnesses, reasonable evaluations of credibility must be afforded “great deference” by the appellate court. Rosell, 549 So.2d at 844. If the findings of the trial court or jury are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
Negligence is conduct that falls below the standard established by law for the protection of others against unreasonable risk of harm. It is the breach of a duty, statutory or non-statutory, owed to another to protect that person from the particular harm that ensued. Callais v. Allstate Insurance Co., 334 So.2d 692, 700 (La.1976) (on rehearing). Negligence is not presumed, and the burden of proving negligence by. a preponderance of the evidence rests upon the party alleging it. *1153 Starks v. Kelly, 435 So.2d 552, 556 (La.App. 1 Cir.1983).
As stated above, an elevator maintenance company must exercise reasonable care in the performance of its services. Thus, Mr. King bore the burden of proving, by a preponderance of the evidence, that Montgomery breached its duty to exercise reasonable care in the performance of its maintenance contract and that this breach was a cause in fact of the accident and his (Mr. King’s) subsequent damages.
According to the record, Mr. Gerald Robert, a service repair technician, was dis^ patched to the IBM building on the day in question. He initially arrived at the building at 9:00 a.m. to check on a problem with the “number one” elevator. At that time, he discovered that the selector on the elevator had malfunctioned and was “out of step” causing it to stop slightly above the third floor, although the.position indicator above the elevator doors showed that it was stopped on the second floor. He cleaned and readjusted the selector system. He also cheeked the relays, which he described as two inch by two inch clear plastic cubes with contacts and a coiled wire on the inside, and found that they were all functioning properly. He explained that he would have easily been able to see if any of the contacts were burnt. Mr. Robert indicated that a relay is “basically like a light bulb” and that there is no way of predicting when a relay might fail. He also noted that there is nothing about maintenance and/or nonjmaintenanceg of an. elevator that would cause a relay to burn out or malfunction before its time. According to Mr. Robert, he ran the elevator for approximately 30 minutes, during which time “it operated perfectly.” When asked what could, have caused the selector to malfunction, Mr. Robert responded that “it could be a number of reasons.” He returned the elevator to service and left the building at approximately 10:15 a.m.
Mr. Robert received a second call about the same elevator at approximately 10:50 a.m. When he arrived at the building at 11:03 a.m., the “number one” elevator was again located above the third floor. However, this time the position indicator correctly showed that the elevator was stopped on the third floor, thus indicating that the selector was “in step.” Mr. Robert then visually inspected the elevator and checked the relays, but found nothing wrong with the elevator. He then ran the elevator without problem for some time. It was not until after about two hours that it malfunctioned again. It was at that point that he realized that the third floor relay was not working properly. He replaced the bad relay and put the elevator back into service. Mr. Robert also noted that when he left the building after his first service call, the third floor relay was working properly.
Mr. Robert was not aware of any problem with the elevators dropping a number of feet while they were operating. He indicated that this was not the problem that he discovered with the “number one” elevator on either of his maintenance calls. In fact, he noted that the “elevator was just about at the highest point it could go” when he arrived at the building and that if the elevator had dropped, it would have been below the third floor. Finally, Mr. Robert testified that he believed that the two incidents involving the “number one” elevator on December 9, 1991, were independent problems that were unrelated.
We have thoroughly reviewed the record and find that there was a reasonable factual basis to support the jury’s findings. The finding by the jury that neither Montgomery nor its employee, Mr. Robert, was negligent in this matter was a factual finding that was not manifestly erroneous. The jury clearly determined that Mr. King failed to meet his burden of proving that Montgomery, through its employee Mr. 19Robert, breached its duty to exercise reasonable care in the performance of its maintenance contract. Thus, assignments of error three and four are without merit.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against defendants-ap-pellees.
AFFIRMED.
*1154 GUIDRY, J., concurs.
FITZSIMMONS, J., concurs and assigns reasons.

. For purposes of trial, this case was consolidated with another personal injury suit filed by Mr. King for injuries he allegedly sustained in a separate incident at Home Depot. Following the trial of this matter, judgment was rendered in favor of the King family and against Home Depot. The judgment rendered against Home Depot has been fully satisfied and is not currently before this court.

. The facts of this case arose in December of 1991, prior to the enactment of La. Civ.Code art. 2317.1 in 1996, which modifies La. Civ.Code art. 2317.