**Barbara A. WILLOUGHBY, et al.**

**v.**

**MONTGOMERY ELEVATOR CO.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

March 11, 2002.

Permission to Appeal Denied by
Supreme Court Oct. 7, 2002.

David H. Dunaway, LaFollette, Tennessee, for the Appellant Barbara A. Willoughby.

R. Kim Burnette, Knoxville, Tennessee, for the Appellee Montgomery Elevator Company.

### OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Barbara Willoughby ("Plaintiff") was injured exiting an elevator at her place of employment. Plaintiff sued Montgomery Elevator Company ("Defendant") who had a contract with the Department of Energy ("DOE" or "Government") to service and repair the elevator. The dispositive issue on appeal is whether Defendant is an owner and operator of the elevator and, therefore, should be held to the higher standard of care of a common carrier. The Trial Court determined that the higher standard of care was not applicable and instructed the jury only with regard to ordinary neg-

ligence. After a jury verdict was rendered in favor of Defendant, Plaintiff appealed claiming the jury should have been instructed on the higher standard of care. We affirm.

### Background

On September 2, 1997, Plaintiff was injured exiting an elevator located in the Joe Evans Federal Building in Oak Ridge, Tennessee. Apparently, the elevator was not level with the floor when Plaintiff attempted to exit. Plaintiff was employed by the federal government and worked in the building. Defendant entered into a service contract with the DOE to inspect and repair the elevator at issue. As relevant to this appeal, the lengthy contract between Defendant and the DOE provides, among other things, as follows:

INSPECTION OF SERVICES–FIXED PRICE

(a) Definitions. "Services," as used in this clause, includes services performed, workmanship, and material furnished or utilized in the performance of services.

(b) The Contractor shall provide and maintain an inspection system acceptable to the Government covering the services under this contract. Complete records of all inspection work performed by the Contractor shall be maintained and made available to the Government during the contract performance and for as long afterwards as the contract requires.

(c) The Government has the right to inspect and test all services called for by the contract, to the extent practicable at all times and places during the term of the contract. The Government shall perform inspections and tests in a manner that will not unduly delay the work.

(d) If any of the services do not conform with contract requirements, the Government may require the Contractor to per-

form the services again in conformity with contract requirements, at no increase in contract amount. When the defects in services cannot be corrected by reperformance, the Government may (1) require the Contractor to take necessary action to ensure that future performance conforms to contract requirements and (2) reduce the contract price to reflect the reduced value of the services performed.

(e) If the Contractor fails to promptly perform the services again or to take the necessary action to ensure future performance in conformity with contract requirements, the Government may (1) by contract or otherwise, perform the services and charge the Contractor any cost incurred by the Government that is directly related to the performance of such service or (2) terminate the contract for default.

INSPECTIONS AND TESTS

All inspections, workmanship, or equipment shall be subject to reinspection, examination, and test by Government inspectors at any and all times during the course of the work and at any and all places where such work is being carried on. The Government shall have the right to reject defective maintenance or reports. Rejected items shall be satisfactorily corrected and/or replaced without additional expense to the Government.

In the case of failure by the Contractor to comply with the scheduled frequency prescribed for the performance of any part of the work, or if any operation is omitted on any occasion when scheduled for performance, the attention of the Contractor will be called to this failure or omission and he will be requested by the Contracting Officer then to perform the omitted operation. If the Contractor does not comply with the request

within such time as the Contracting Officer deems to be reasonable, the work will be done by employees of the Government or otherwise and the cost thereof will be deducted from any money due or which may become due the Contractor under the contract.

ACCEPTANCE

Acceptance of all work and effort under this contract (including "Reporting Requirements," if any) shall be accomplished by the Contracting Officer, or any duly designated successors.

\* \* \* \*

TECHNICAL DIRECTION

a. Performance of the work under this contract shall be subject to the technical direction of DOE Contracting Officer's Representative (COR). The term "technical direction" is defined to include, without limitation:

1. Directions to the Contractor which redirect the contract effort, shift work emphasis between work areas or tasks, require pursuit of certain lines of inquiry, fill in details or otherwise serve to accomplish the contractual Statement of Work.

2. Provision of written information to the Contractor which assists in the interpretation of drawings, specifications or technical portions of the work description.

3. Review and, where required by the contract, approval of technical reports, drawings, specifications and technical information to be delivered by the Contractor to the Government under the contract.

\* \* \* \*

d. The Contractor shall proceed promptly with the performance of technical directions duly issued by the COR in the manner prescribed by this clause and within his authority under the provisions of this clause....

Plaintiff sued Defendant asserting several causes of action centered around an alleged failure by Defendant to inspect and maintain the elevator in a safe condition. Prior to trial, Plaintiff requested a jury instruction to the effect that Defendant owed Plaintiff the higher degree of care of a common carrier. Defendant opposed this instruction, claiming the applicable standard of care was that of ordinary negligence. The Trial Court agreed with Defendant, and refused to instruct the jury on the higher standard of care. The jury trial lasted for several days, after which the jury returned a verdict in favor of Defendant with regard to the allegations of ordinary negligence. Plaintiff does not challenge the jury's finding on behalf of Defendant with regard to ordinary negligence. The only issue on appeal is whether the Trial Court erred in refusing to instruct the jury on the higher standard of a common carrier.

### *Discussion*

The existence of a duty is a question of law for the court. *See Blair v. Campbell,* 924 S.W.2d 75, 78 (Tenn.1996). Review of questions of law is *de novo,* without a presumption of correctness. *See Nelson v. Wal–Mart Stores, Inc.,* 8 S.W.3d 625, 628 (Tenn.1999).

The parties do not dispute that the following excerpt from *Vann v. Howell,* No. 02A01–9809–CV–00246, 1999 WL 454628, 1999 Tenn.App. LEXIS 425 (Tenn.Ct.App. June 30, 1999) defines the obligation of owners and operators of elevators and sets forth applicable Tennessee law:

"A landlord who retains the control and management of an elevator provided for the common use of his tenants may be responsible for injuries to his tenants,

their employees, and such other persons as may lawfully use the elevator." 26 Am.Jur.2d *Elevators and Escalators* § 22 (1996).

\* \* \* \*

In a few states, the owner and operator of an elevator also has a more stringent duty than that of reasonable care. *See* 26 Am.Jur.2d *Elevators and Escalators* § 14 (1996). Tennessee is one such state which holds the owners and operators of elevators have an "obligation to passengers on elevators ... [that] is the same as that of common carriers to passengers, and that they must use and exercise the highest degree of care and precaution." *Southern Bldg. & Loan Ass'n v. Lawson,* 37 S.W. 86, 87, 97 Tenn. 367 (1896).

*Vann,* 1999 WL 454628, at \* 3–\* 4, 1999 Tenn.App. LEXIS 425, at \* 9–\* 11. We must determine if Defendant is properly classified as an "owner and operator" of the elevator in question. If so, then the higher duty of care attaches.

In *Jones v. Metro Elevator Company,* No. W2000–02002–COA–R3–CV, 2001 WL 1683782, 2001 Tenn.App. LEXIS 962 (Tenn.Ct.App. Dec.31, 2001) (no Rule 11 app. for perm. to appeal filed), the plaintiff was injured when an elevator came to an abrupt stop. The plaintiff sued Tomlinson, the landlord of the building, as well as Metro Elevator Company, who was responsible for maintenance of the elevator. On appeal, one of the issues was whether the landlord was entitled to summary judgment. *Jones,* 2001 WL 1683782, at \* 3, 2001 Tenn.App. LEXIS 962, at \* 8. This Court affirmed the granting of summary judgment to the landlord. In so doing, we observed that Metro Elevator Company had *exclusive* control over the elevator in question. Because Metro Elevator Company had exclusive control over the eleva-

tor, the landlord was entitled to summary judgment because landlords are responsible for the condition of common areas *"under their control." Id.,* 2001 WL 1683782, at \* 5, 2001 Tenn.App. LEXIS 962, at \* 13 (emphasis in original).

While the present case does not involve landlord liability, we believe the reasoning in *Jones* is instructive because it focuses on a crucial issue, i.e., who has control of the elevator. Admittedly, the facts in *Jones* more easily fit the *Vann* analysis because one entity was solely responsible for the elevator. That is not the situation in the present case. Both DOE and Defendant exercised at least some control over the elevator. Under the facts of this case, however, we believe that DOE is properly classified as the "owner and operator" of the elevator in question, not Defendant. We reach this conclusion because of the contractual language quoted above. In particular, we rely on the contractual language where DOE maintained the right to: 1) inspect and test all services performed by Defendant; 2) require Defendant to perform services in accordance with the contract and reserving to DOE the right to take appropriate remedial action if it does not; 3) ensure Defendant's future performance of the contract; and 4) set forth the frequency of Defendant's inspections of the elevators. In addition, DOE maintained "technical direction" over Defendant's performance under the contract, maintaining the power to: 5) "redirect the contract effort, shift the work emphasis between the work areas or tasks ..."; 6) assist in the drawings, specifications or technical portions of Defendant's work description; and 7) review and approve technical reports, drawings, specifications, etc. Quite simply, DOE maintained a significant amount of control over the elevator.

In light of the contractual language, we hold that Defendant is not an "owner and operator" of the elevator in question. Other jurisdictions which have addressed this issue likewise focus on who has control over the elevator. *See, e.g., Kimball v. Otis Elevator Company,* 89 Wash.App. 169, 176, 947 P.2d 1275, 1279–80 (1997)("[Plaintiff] contends the court should have summarily ruled that Otis was required to exercise the high standard of care of a common carrier based on its full service maintenance contract. She concedes Division One rejected the same argument in *Pruneda v. Otis Elevator Co.,* 65 Wash.App. 481, 828 P.2d 642 (1992), which holds elevator maintenance companies with full service contracts will not be held to the common carrier standard unless they keep a full-time employee on site to repair defective elevators."). Similarly, in *King v. Home Depot U.S.A. Inc.,* 729 So.2d 1149 (La.App.1999), the Louisiana Court of Appeals rejected the plaintiff's argument that Montgomery Elevator Company should be held to the higher standard of care of a common carrier. The *King* Court concluded that "when an elevator maintenance company is neither the owner of the elevator nor has exclusive 'garde' of the elevator, it must exercise reasonable care in the performance of its services." *Id.* at 1152. Because Defendant is not an owner or operator of the elevator, the Trial Court did not err in refusing to instruct the jury on the higher standard of care, and properly limited the jury instruction to that of ordinary negligence.

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellant, Barbara A. Willoughby and her surety.