363 So.2d 1321 (1978)
Mary Etta WOLVERTON, guardian and adult next friend of the minor, Judy Elaine Wolverton, Age 11
v.
CITY STORES COMPANY et al.
No. 9432.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1978.
*1322 Charles R. Maloney, New Orleans, for plaintiffs-appellants-appellees Mary Etta Wolverton, etc.
Drury, Lozes & Curry, James H. Drury, New Orleans, for defendant-appellee-appellant Otis Elevator Co.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Claude D. Basser, New Orleans, for defendant-appellee City Stores Co.
Before GULOTTA, STOULIG and GARRISON, JJ.
GARRISON, Judge.
This suit was originally brought by Mary Etta Wolverton, individually and on behalf of her daughter Judy Elaine Wolverton, who was eleven years old in August 1968 when she was injured by a fall on the "up" escalator in the Maison Blanche store on Canal Street in New Orleans. By the time of the trial in 1977, Judy Wolverton was 19 years old and was substituted as party plaintiff on her own behalf by oral motion. Her mother, however, remained a party plaintiff to recover the special damages incurred by her.
Suit was originally brought in the U.S. District Court for the Eastern District of Louisiana under diversity jurisdiction, inasmuch as the Wolvertons are residents of Hattiesburg, Mississippi. Made defendants were City Stores Company (of which Maison Blanche is a subdivision) and Otis Elevator Company (as manufacturer and maintenance contractor for the escalator in question). The claims against both defendant were dismissed for lack of jurisdictional amount.
The instant suit was filed originally against City Stores alone. Otis was added some three years later in a supplemental and amended petition. In addition, City Stores filed a third-party petition against Otis for indemnification or contribution. A subsequent amendment added the City of New Orleans as a defendant; however, as an exception of no cause of action was maintained in favor of the City, and no one has complained of that judgment, that issue is not before us.
The matter was tried on September 26, 1977, and judgment was rendered on September 30, 1977 against defendant Otis alone, in favor of Judy Wolverton in the amount of $6,000, and in favor of her mother for $224. Plaintiffs' suit against City Stores was dismissed, as was the third-party demand of City Stores against Otis. Defendant Otis has appealed from the judgment against it, and plaintiffs have appealed the dismissal of defendant City Stores.
With regard to the appeal by the defendant Otis, based upon the claim that prescription accrued on the claim against it, it is noted that its exception of prescription was filed in the trial court, but the record does not reflect what, if any, ruling was ever made on the exception. On its face this exception would appear to have merit *1323 since Otis was not joined as a defendant until some three years after the suit was originally filed, and no joint liability between Otis and City Stores was found by the trial court. Nonetheless, prescription was never reurged by Otis until the week before oral argument in this Court. After consideration of the entire case, however, we have concluded that the matter of prescription is not a viable issue here. In the final analysisas is indicated later in this opinionit is the conclusion of this Court that any liability on the part of Otis would be joint liability coordinately with City Stores, so that the filing of the suit against City Stores interrupted prescription as to Otis.
The appeal of plaintiffs with regard to the dismissal of defendant City Storeswhile ultimately resolving itself into an issue of lawnecessarily requires initially a review of the facts of the case.
The evidence produced at trial was not particularly enlightening as to what actually occurred. The facts are still in dispute, not as to whether plaintiff Judy Wolverton fell and injured herself on the escalator (which is admitted), but as to the cause of the fall. Plaintiffs' major contention is that, while Judy was riding on the escalator, the escalator made a sudden jerk or jolt, causing Judy to lose her balance, fall and gouge her right knee on the edge of one of the steps. Both defendants, on the other hand, maintain that the escalator could not jerk as plaintiffs claim; rather, they contend, Judy's fall was the result of her own carelessness.
In support of plaintiffs' version is their own testimony that a jerk occurred, as well as the testimony by deposition of two young girls who were with them,[1] who testified that they were also on the escalator when it jerked, but that Judy was the only one who lost her balance and fell. Mrs. Wolverton's testimony differed, in parts, from her deposition some seven years before, particularly as to where she was at the time of the alleged jerk. in her deposition she stated that she was standing slightly behind Judy on the escalator and felt the jolt herself. In contrast, at trial she testified that she had already reached the top of the escalator and was waiting on the floor above for the others to get there, when she saw everyone rock when the escalator jerked. However, other than this discrepancy, her testimony was substantially the same at trial as it had been in her deposition. Both times she was positive about the fact of a jerk in the escalator's motion which threw everyone off-balance.
Similarly, Judy's testimony at trial was, for the most part, the same as in her 1970 deposition. There was an understandable effort at trial by counsel for Otis to underscore a seeming contradiction between her deposition and her testimony at trial, by focusing on Judy's description of the escalator movement. In her deposition she had described what occurred as a brief stop in the escalator's motion, "and then it kept on going." However, at trial she stated that the escalator did not stop, but jerked. However, as she stated at the trial, any inconsistency in her statements would appear to have been merely a marginal variation in the description of the word "jerk."
In rebuttal, the defense offered three elevator maintenance experts who testified as to the maintenance procedures employed for the escalators at Maison Blanche. Routine inspections were performed at least once a week and the inspector asked the store maintenance personnel if any problems with the equipment had appeared or had been reported. Mr. Morel, the Otis inspector for the Maison Blanche escalators, stated that he had received no special call complaining of a malfunction in this escalator, and he observed no evidence of any jerking or stopping problem when he inspected it on the Monday following this accident.
Mr. Morel and the other escalator expert witnesses all testified that a jerk, as *1324 claimed by plaintiffs, could not occur; however, it was not really considered as a total impossibility (e. g., Morel testified that a small piece of metal caught in an escalator might cause it to jerk). Much was made also of the fact that if the escalator stops for any reason, it will not start up again on its own, but must be specially restarted by the use of a key. This, of course, presumes that the escalator actually stopped and did not "jerk" as alleged.
However, in any case, there was no adequate proof that a "jerk" could not have occurred. There clearly were no reports of any complaints of jerking made to Otis by Maison Blanche on the day in question, but this alone does not prove that the escalator did not, in fact, jerk. It proves only that no report of the incident was made to Otis.
Defendants also rely heavily on the deposition of Mrs. Katherine Eicke, the staff nurse at Maison Blanche who administered first aid to Judy's injured knee. She testified, and her Report of Injury form reflects, that Mrs. Wolverton told her that her daughter had fallen on the escalator when she turned around to speak to her friends. This report, obviously, is the reason no report of malfunction was made to Otis. The plaintiffs strenuously deny this version of the fall, and Mrs. Wolverton stated that she gave the nurse no details of the accident whatsoever (just that Judy had fallen on the escalator), because no one asked her.
Neither side produced any truly independent witnesses, and under the circumstances it is difficult to say that the trial judge committed manifest error when he concluded, as a finding of fact, that the escalator had made some sort of jerk which caused Judy to fall and injure her knee. Canter v. Koehring Co., 283 So.2d 716 (La. 1973).
It does appear that the trial judge erred, as a matter of law, in dismissing plaintiffs' claim against City Stores and City Stores' third-party demand against Otis. However, the latter question is not before us, inasmuch as it was not appealed by City Stores. Once plaintiff's right to recover has been established, both defendants must be held liable under these facts.
Plaintiffs' allegation against defendant City Stores, as owner and operator of the escalator in question, which was within its custody and control, included negligence in the maintenance of the escalator and responsibility for a defective escalator. Because defendant Otis was the manufacturer of the escalator, as well as the party responsible for its maintenance under the maintenance contract with Maison Blanche,[2] they are jointly, if not primarily, liable for any damages resulting from an escalator malfunction.
With regard to the liability of City Stores, under the recent interpretations of Articles 2317[3] and 2322[4] of the Civil Code in Loescher v. Parr, 324 So.2d 441 (La.1975), its liability seems almost inescapable. The issue is essentially the same as in Loescher: whether the owner of a building in which an escalator is located should be held liable for an injury resulting from some defect in the escalator, in the absence of any actual negligence or inattention on the owner's part. The Supreme Court answered that question affirmatively in the Loescher case, in which a tree limb fell on a neighbor's car and damaged it. The reasoning focused on the strict liability concepts previously applied under Articles 2318, 2320, 2321 and 2322, to the effect that all that the plaintiff need prove is the existence of some vice in the thing causing damage, and that the damages were the result of this vice. See *1325 Loescher v. Parr, supra, at 446-447. These principles were extended to cover Article 2317 as well.
It must be emphasized that it is not intended that the store become regarded as the insurer of its customers, as might be the effect of applying concepts of strict liability in the absence of an "unusual occurrence." However, there was proof of such an occurrence, namely the "jerk" by the escalator. Even though that evidence might be described as moderate in weight, the trial judge specifically concluded in his reasons for judgment that such a jerk had occurred. Consequently, the concept of liability under C.C. Article 2317 is applicable here.
Inasmuch as City Stores, through the Maison Blanche store, had the escalator in its "custody" as per Article 2317 and, under the facts as found by the court below, an unexplained jerk occurred, the requirements for liability without fault (as set out in Loescher, supra) are met. As long ago as 1964, the United States Fifth Circuit Court of Appeals found the following to be a correct statement of Louisiana law:
"The law states that while the owner of a passenger elevator operated in a business building for carrying passengers up and down may not be a carrier of passengers in the sense that he is bound to serve the public, yet this duty as to protecting the passengers in his elevator from danger is the same as that applicable for the carrier of passengers by other means, and he is bound to do all that human care, vigilance and foresight can reasonably suggest under the circumstances and, in view of the character of the mode of conveyance adopted, to guard against accidents and injuries resulting therefrom; and a failure to exercise such reasonable care will constitute negligence rendering him liable. . . ." Otis Elevator Company v. Seale, 334 F.2d 928, 929 (5th Cir. 1964).
Although that case concerned an elevator, the same principles are applicable to escalators.
Accordingly, the judgment dismissing the plaintiff's demand against City Stores is reversed, with judgment to be entered in favor of plaintiff. The judgment in favor of the plaintiff against defendant Otis Elevator Company is affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] The Wolvertons came to New Orleans from Hattiesburg with three other young girls (about the same age as Judy) and an older girl as chaperone with Mrs. Wolverton. They were on a weekend trip with their church youth group.
[2] There is nothing in the maintenance contract that would relieve either City Stores or Otis from liability.
[3] "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications." C.C. Art. 2317.
[4] "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction." C.C. Art. 2322.