409 So.2d 389 (1982)
Terrell Ann POWER
v.
OTIS ELEVATOR COMPANY, New Orleans International Trade Building Corporation, International Trade Mart, ABC and XYZ Insurance Companies.
No. 12192.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1982.
T. Peter Breslin, Gauthier & Murphy, Kenner, for plaintiff-appellant.
Jack M. Alltmont, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, for defendants-appellees (New Orleans Intern. Trade Bldg. Corp. and Intern. Trade Mart).
James H. Drury, Drury & Lopez, New Orleans, for defendant-appellee (Otis Elevator Co.).
Before SCHOTT, GARRISON and KLEES, JJ.
SCHOTT, Judge.
Plaintiff, Terrell Ann Power, has appealed from a dismissal of her suit for damages she sustained in a fall on an escalator in the International Trade Mart Building in New Orleans where she was employed. Defendants are New Orleans International Trade Building Corporation, the owner of the building, and the Otis Elevator Company which installed and maintained the escalator under contract with the building owner. The case was tried to a jury.
Plaintiff, who was 22 years of age at the time of the accident, was descending between the third and second floor in the company of another young woman when the two fell from a point about half way between floors. They tumbled down on the *390 stairs of the escalator to the floor below. She alleged and offered evidence to prove that her accident was caused by a defect in the escalator in that "it malfunctioned, causing it to jerk violently and stop suddenly."
Plaintiff's evidence consisted of her own testimony and that of two witnesses who were at the top of the escalator when the accident occurred. Her companion was not called as a witness. Plaintiff testified that as she was descending a step behind her companion the escalator jerked, whereupon she and her companion began to fall, tried to grab each other and went tumbling down the stairs together. She also described the escalator's movement as "like a pull," and a "funny movement."
Dage Hove testified that as plaintiff and her friend were half way down the escalator he and a companion, Robert Sage, were starting down the escalator from the third floor. As he was ready to step on the escalator from the third floor it "made a funny movement and kept going again." At this point the two girls fell. He stated, "I could see that it stalled and then started." He also characterized the escalator's movement as an instantaneous jerk.
Mr. Sage testified that he had just gotten on the escalator when he felt a surge or irregularity, whereupon he grabbed the hand-hold and realized that people were falling in front of him. He also characterized the escalator's movement as an erratic movement, "like an irregularity of the speed of the escalator." He explained that it seemed to slow down and then surge as it resumed its normal speed.
On the other hand, defendant Otis produced as witnesses Leonard Labrousse, who operated a shop near the foot of the escalator on the second floor, John P. Christman, Jr. and Norris Ward, Otis mechanics who serviced the elevator, and David Steel, an escalator engineer. Labrousse's attention was called to plaintiff and her companion when he heard them laughing and talking and next saw them falling on the escalator. He ran to their assistance and called down to the Security Guard on the floor below. This guard came up and stopped the escalator by pressing a button.
Christman, who was the regular maintenance mechanic for this escalator, and Ward, his supervisor, both inspected the escalator after the accident and found nothing wrong with it. They also testified that there had never been any trouble with the escalator since its installation some years before. Ward testified that the escalator is constructed in such a way that if the current is interrupted causing it to stop it cannot start again unless a key is inserted in a switch. Otis offered in evidence a key switch identical to the one installed on the escalator in question and demonstrated how the contacts are held apart by a spring when the current is interrupted so that the points of contact cannot be brought together thereafter without the use of a key. He also explained that the escalator would automatically stop in the event that something became jammed between moving parts and that it could not start up thereafter without the key switch being utilized.
Mr. Steel, the escalator engineer, explained that the speed of the escalator is governed by the cycles in electrical power which is 60 cycles uniformly throughout the United States. He explained that the only way the escalator could slow down would be as a result of a slow down in the cycles which would necessarily cause a slow down of all electric motors and clocks in the area and could only result from a serious problem in the generating station providing electricity for a large area. He also explained in detail that the escalator's components were such that if the escalator stopped it could not start up on its own. In his opinion, it was not possible for the escalator to have jerked, surged or made an erratic or funny movement without at least coming to a stop. He offered as an explanation for Mr. Sage's feeling of a funny movement or surge as Sage's reaction as he suddenly changed from the speed of walking onto the escalator to the greatly reduced speed that the escalator travels of approximately one-third the speed at which a person normally walks. He also surmised *391 that Mr. Sage's funny movement might have been the vibration transmitted along the stairs as the two girls were tumbling down. Finally, Mr. Steel explained that if the escalator were jammed and brought to a forceful stop as with a jerk, the kinetic energy built up by this heavy moving equipment would necessarily cause damage to some parts of the escalator, and the absence of such damage necessarily precluded a sudden stop or jerk.
The jury heard all this testimony and necessarily concluded that the escalator did not malfunction and that plaintiff's fall was more probably due to her own failure to take adequate precautions as she rode the escalator. They may have inferred from the testimony of Mr. Labrousse that as plaintiff and her companion were laughing and talking they were inattentive and lost their balance or they may have been impressed with some evidence elicited from plaintiff on cross examination that her attention was focused on a napkin that was caught in the escalator parts and which she called to her companion's attention just before they fell. In any event, plaintiff's evidence was not compelling and the jury had a sufficiency of evidence before it to conclude that plaintiff did not prove her case of a defect in the escalator. For us to reverse would constitute an invasion of the fact finding function of the jury.
For this reason plaintiff's reliance on Wolverton v. City Stores Co., 363 So.2d 1321 (La.App. 4th Cir. 1978) is misplaced. There the court was faced with an appeal from a judgment in favor of plaintiff and concluded:
"Under the circumstances it is difficult to say that the trial judge committed manifest error when he concluded, as a finding of fact, that the escalator had made some sort of jerk which caused Judy to fall and injure her knee."
A reading of the Wolverton case reveals that the quality of the evidence presented by defendant to show that the escalator could not have jerked was far less convincing than what was placed before the jury in the instant case, which may explain why the results in the trial courts were different in the two cases. However, the same principle which led us to affirm in Wolverton dictates the same result in this case; i.e., we cannot say that the jury was clearly wrong in concluding adversely to plaintiff on her attempt to prove that the escalator malfunctioned.
Finally, plaintiff assigns error in the trial courts allowing six peremptory challenges to each of the defendants. The record does not show that an objection was timely made to this decision by the trial court so that the objection was waived. LSA-R.S. 13:3052. Even if an objection had been made it would have been meritless because C.C.P. Art. 1764 allows six peremptory challenges to each side. Otis Elevator Company and the building owner were not on the same side of this lawsuit but were parties to a third party demand filed by the building owner.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.