633 So.2d 383 (1994)
John C. ATKINSON, et al., Plaintiffs/Appellants,
v.
CELOTEX CORPORATION, et al., Defendants/Appellees.
Albert ARMISTEAD, et al., Plaintiffs/Appellants,
v.
CELOTEX CORPORATION, et al., Defendants/Appellees.
Nos. 93-924, 93-925.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1994.
Rehearing Denied April 7, 1994.
*385 William Boyce Baggett Jr., William B. Baggett, Wells Talbot Watson, for Albert Armistead, et al., and John Calvin Atkinson, et al.
Lawrence Goode Pugh III, for Celotex Corp., et al.
Robert Ellis Guillory Jr., William T. McCall, Gregory Joseph Spicer, for INA.
Richard L. Forman, John D. Cosmich, John R. Santa Cruz, Scott Leray, for Owens-Illinois.
Dermot S. McGlinchey, James Michael Garner, for Ins. Corp. as Insurer of Keene Corp.
Russell D. Holwadel, for Manville Personal Injury Settlement Trust.
J. Michael Johnson, Larry Gene Canada, for Combustion Engineering.
Edwin A. Ellinghausen III, David L. Tolin, for Fibreboard Corporation.
Louis G. Lemle for Owens-Corning Fiberglass Corp.
James L. Pate, Ben Louis Mayeaux, for M.H. Detrick Co.
*386 Kenneth R. Spears, for Oxy Oil & Gas USA.
Stephen Porter Hall, Richard Nelson Dicharry, for Ernest Alfred Moore, etc.
Maria Isabel O'Byrne Stephenson, Lisa Carol Matthews, for Rock Wool Mfg. Co.
Thomas M. Bergstedt, for Keene Corp.
Robert Emmett Kerrigan Jr., Arthur Wendel Stout III, Janet Leslie MacDonell, Gary Barkley Roth, for GAF Corp.
Vance Edward Ellefson, Anthony John Staines, for Eagle-Pitcher Industries.
Daniel James Caruso, Elizabeth Reidy Leach, for Commercial Union Ins. Co.
Before WOODARD and DECUIR, JJ., and BERTRAND[*], J. Pro Tem.
LUCIEN C. BERTRAND, Jr., Judge Pro Tem.
These consolidated suits were brought by 12 men who were allegedly exposed to asbestos-containing materials while employed at the Cities Service Refinery in Calcasieu Parish. Several of their wives brought loss of consortium claims, and the wives and/or children of five of the men who died before trial were substituted as parties plaintiff and wrongful death and survival claims were added. Named as defendants in both suits were various manufacturers of asbestos-containing products used at Cities Service and the insurers of certain executive officers employed by Cities Service at the time of the alleged exposure to asbestos dust. The years of alleged exposure for each claimant took place between 1945, the year the plant was constructed, and 1976, the year the Louisiana legislature amended La.R.S. 23:1032 of the Louisiana Workers' Compensation Law to eliminate negligence suits against executive officers of corporate employers. For purposes of liability against the manufacturers, the years of exposure continued beyond 1976 to each man's retirement date.
By the time of trial, most of the defendants had settled or were dismissed. The only defendants which participated at the trial of these consolidated cases were Owens-Illinois, Inc., and Keene Corporation, both manufacturers of asbestos-containing products, and Insurance Company of North America, the primary insurer of the Cities Service executive officers. Issues of liability, causation, and damages were tried before a jury and judgments were rendered in favor of the 12 men. All of the loss of consortium claims were denied, as were the wrongful death claims asserted by the families of Clodile Romero, Joseph Comeaux, and Richard Watson.
The awards, consisting solely of general damages, were as follows:

Morris Thomas $250,000.00
John Calvin Atkinson 100,000.00
Berry Naff 100,000.00
Joseph Comeaux 40,000.00
Clodile Romero 40,000.00
Richard Watson 40,000.00
Russell Trahan 30,000.00
Albert Armistead 20,000.00
Verbia Long 20,000.00
Joseph Manuel 20,000.00
Lawrence Mouton 20,000.00
Earl Myers 20,000.00

Messrs. Thomas, Atkinson, and Naff have not appealed. However, the remaining nine men or their representatives have appealed, contesting the number of peremptory challenges granted to the plaintiffs' side of the litigation, and contending their damage awards were inadequate. One plaintiff, Faye Myers, appeals the denial of her loss of consortium claim. The defendants have neither appealed nor answered the appeal. For the reasons which follow, we find no manifest error in the judgment rendered below and affirm.

BACKGROUND
The 12 men who have brought suit herein were employed in the maintenance department of Cities Service. Some were general laborers, but others were employed specifically as insulators, carpenters, pipe fitters, and the like. Each man alleged that he was regularly exposed to asbestos dust and asbestos-containing materials in the course of *387 his employment, regardless of his craft or position.
Prior to trial, the trial court granted a partial summary judgment in favor of the plaintiffs, finding that asbestos-containing products are unreasonably dangerous. The plaintiffs still had to prove, however, that they were exposed to asbestos and that they were damaged by that exposure. With regard to the fault of the manufacturers, the jury interrogatories questioned whether each plaintiff's injury was "substantially contributed to by exposure to" each manufacturer's product. With regard to the fault of the executive officers, the jury interrogatories questioned whether they "were negligent in the performance of a delegated duty which was a cause of injury or damage" to each plaintiff. Of the 14 manufacturers, the jury exonerated five with regard to two plaintiffs and three with regard to 10 plaintiffs. Of the 16 executive officers, three were found to be without negligence. These factual findings were not contested and are not before us in this appeal.

ISSUE 1: PEREMPTORY CHALLENGES
The first issue raised by the plaintiffs concerns the number of peremptory challenges allocated to each side involved in this litigation. The trial court determined that the controversy was three-sided. The judge decided that the interests of the executive officers, represented by their insurer, INA, were separate and distinct from the manufacturers, Owens-Illinois and Keene Corporation. Accordingly, the trial judge gave the plaintiffs as a group six challenges, the defendant-manufacturers, as a group, six challenges, and the defendant-insurer, six challenges. Subsequently, and upon further argument, the trial judge granted four additional challenges to the plaintiffs for a total of ten challenges to the plaintiffs' side of the controversy and six challenges to each of the two defense sides of the controversy.
In Smith v. State Farm Insurance Co., 446 So.2d 1269 (La.App. 4th Cir.), writs denied, 449 So.2d 1356, 449 So.2d 1360 (La.1984), the Fourth Circuit discussed the proper method for determining the number of sides in a case:
If there are incidental demands such as third party claims among co-defendants which place the defendants in truly adverse postures, the lawsuit may have more than two sides. In that case each side would receive the same number of challenges depending on the number of parties on a side and the court's decision.
446 So.2d at 1272. See also, Dean v. Nunez, 534 So.2d 1282 (La.App. 4th Cir.1988), writ granted, 536 So.2d 1203 (La.1989) (decision to remand reversed; court of appeal instructed to decide the case on the record); O'Brien v. Delta Gas Inc., 426 So.2d 262 (La.App. 4th Cir.), writ denied, 433 So.2d 163 (La.1983); Power v. Otis Elevator Co., 409 So.2d 389 (La.App. 4th Cir.1982).
By contrast, in Duvio v. Continental Casualty Co., 452 So.2d 182 (La.App. 4th Cir.), writ granted, 458 So.2d 931 (La.1984) (decision to remand reversed; court of appeal instructed to decide the case on the record), and Nettles v. Bowlin, 417 So.2d 1192 (La. App. 1st Cir.), (on rehearing), writs denied, 422 So.2d 416, 422 So.2d 417 (La.1982), the appellate courts reversed the trial courts' findings of three-sided litigation. In neither case were the parties truly adverse.
In the instant case, the manufacturers and the executive officers were sued on different theories of liability and had to present different defenses. They filed claims against each other and were adverse to one another on various matters that came up throughout the litigation. Given these circumstances, we believe the trial judge's pretrial finding of three-sided litigation is not manifestly erroneous, nor do we find error in the decision to deny plaintiffs' motion for a new trial on this issue.
We note the trial judge relied on La. C.C.P. Art. 1764 B to increase the number of peremptory challenges to the plaintiffs to 10. Given the large number of plaintiffs, the trial judge acted within his discretion in granting the maximum number of peremptory challenges. The trial judge erred, however, in failing to comply with the provisions of La. C.C.P. Art. 1764 C which require that each side be allowed an equal number of peremptory *388 challenges. In addition to granting the plaintiffs four additional challenges, the trial judge should have also granted additional challenges to the two defense sides. However, because this issue has not been raised by the defendants in an appeal or answer to the appeal, we are bound to affirm the action of the trial court.

ISSUE 2: DAMAGES
Before addressing each award of damages which is contested in this appeal, we will comment briefly on the standard of review applicable herein. In Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), the Supreme Court reiterated the long standing rule that the trier of fact is afforded great discretion in making an award of general damages. The language used by Justice Lemmon, writing for the Court, is emphatic:
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
623 So.2d at 1261. See also Rick v. State, DOTD, 93-C-1776 c/w 93-C-1784 (La.1994), 630 So.2d 1271.
In reviewing an award of damages, an appellate court should not rely on a comparison of other awards in other cases to determine if a particular award is appropriate. A comparative analysis should be undertaken only after the appellate court has found an abuse of discretion. The Youn court, citing Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), stated:
Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion.
623 So.2d at 1260. Keeping these principles in mind, we have reviewed the awards granted herein individually, without comparison to each other, and without comparison to the three awards which have not been appealed.
In the present case, the jury awarded general damages after hearing testimony from lay witnesses and medical experts. All of the plaintiffs, with the exception of Joseph Comeaux, testified live or by deposition. Numerous family members also testified. Physicians from the Texas Lung Institute, who evaluated most of the plaintiffs at their counsel's request, testified as to their findings, as did a physician from Tulane Medical School who examined several of the plaintiffs at the defendants' request. Other examining physicians testified and pathologists for both sides reviewed autopsy findings and testified thereto. From this evidence, the jury assessed damages.
Generally, the plaintiffs testified as to their asbestos exposure at Cities Service, their current health problems, and their medical histories. The defendants do not contest in this appeal that the plaintiffs were exposed to asbestos and were damaged by that exposure to some extent. The nature and extent of the damage is the heart of the controversy, and we will give an overview of the differing medical opinions before we address each claim specifically.
Inhalation of asbestos particles can cause a variety of physical changes. Pleural thickening, or the formation of pleural plaques, is a common result of asbestos exposure which affects the outside lining of the lungs (the pleura). Asbestosis is a disease which causes interstitial fibrosis (scarring on the inside of the lungs), usually in the lower lobes of both lungs. Both pleural plaques and asbestosis can sometimes be seen on an x-ray, but asbestosis will usually produce some clinical abnormalities such as pulmonary function deficiencies and rales heard with a stethoscope. The doctors who testified disagreed on the criteria necessary for a diagnosis of asbestosis, regardless of whether the data at hand consisted of x-ray or CT films, clinical findings, or tissue samples from a biopsy or autopsy. Asbestos exposure can also cause certain types of cancer including oat cell carcinoma, mesothelioma, and possibly adenocarcinoma. *389 The plaintiffs' physicians testified that exposure has been linked to heart disease and certain types of gastrointestinal cancers such as kidney cancer, but the defendants' physicians disagreed with these suggestions.
Several of the plaintiffs have alleged fear of cancer as a compensable item of damages. In response, the defendants have attempted to prove how remote the cancer possibility is and contend that neither pleural disease nor asbestosis necessarily increases one's risk of cancer developing from these conditions or from asbestos exposure in general.
Several of the plaintiffs were diagnosed with pleural plaques. According to their physicians, pleural plaques can cause an increased risk of cancer, a decreased life expectancy, and pulmonary function deficiencies which can lead to shortness of breath and other problems. According to the defendants' physicians, pleural plaques are nothing more than a benign and painless buildup of tissue similar to a callus on the hand. They further stated that pleural plaques do not cause shortness of breath or other clinical abnormalities. The doctors testifying for the defense said that pleural plaques do not necessarily lead to asbestosis and asbestosis does not necessarily lead to cancer; however, in order to link a case of lung cancer to asbestos exposure rather than smoking or some other cause, a diagnosis of asbestosis is essential. On the other hand, the plaintiffs' doctors testified that lung cancer can result from asbestos exposure without asbestosis occurring first.
The differing medical evidence concerning the nature of and correlations among pleural disease, asbestosis, and cancer was irreconcilable and, we think, equally plausible. In such a circumstance, we must abide by the rule of appellate review articulated in Martin v. East Jefferson General Hospital, 582 So.2d 1272 (La.1991), which states that where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong.

1. Albert Armistead
Albert Armistead was 80 years old at the time of trial and had been an insulator at Cities Service for more than 20 years. He was diagnosed with pleural plaques and complained of shortness of breath, a hacking cough, pain, an increased incidence of colds, and a fear of cancer.
The defendants' doctor agreed with the diagnosis of pleural plaques but did not believe that condition caused Mr. Armistead's complaints. The defendants pointed out that Mr. Armistead has an extensive medical history, including high blood pressure, arthritis, and two back surgeries. Further, despite these conditions, Mr. Armistead was able to manually rake and mow his lawn until a year before trial. The defendants' physician added that his shortness of breath is a common complaint among people his age.
In awarding general damages of $20,000 to Mr. Armistead, the jury found that he suffered from a physical condition caused by exposure to asbestos. Indeed, his lungs are indisputably scarred, and the jury found the physical manifestations of that injury to be worth $20,000. Given his complaints, and the disparate medical evidence correlating all of those complaints with his disease, we find no abuse of discretion in the jury's award of damages.

2. Verbia Long
Verbia Long worked at the Cities Service refinery almost 40 years. He was a smoker and has heart disease. At the time of trial, Mr. Long was 63 years old, was acting as general contractor for the construction of his own home, and walked regularly for exercise. Also at the time of trial, Mr. Long was complaining of shortness of breath and was unable to have physical relations with his wife.
The plaintiffs' physician diagnosed asbestosis and the defendants' physician diagnosed pleural thickening, though not necessarily related to asbestos exposure. The jury awarded Mr. Long $20,000 as compensation for his physical ailments caused by asbestos exposure. Given Mr. Long's testimony concerning his daily activities, the lack of definitive *390 medical evidence, and the existence of unrelated medical conditions, we find no abuse of discretion in the jury's award.

3. Joseph Manuel
Joseph Manuel was 72 years old at the time of trial and had worked for Cities Service more than 30 years. He retired in 1977, permanently disabled form a back injury. He has an extensive medical history including kidney cancer, two back surgeries, epilepsy, pleurisy, arthritis, and prostate problems. He is able to enjoy hunting and fishing but testified that he has trouble breathing and is extremely afraid of getting cancer again.
Mr. Manuel was diagnosed with pleural plaques and probable asbestosis. The defendants' physician agreed with the diagnosis of pleural plaques but disagreed with the diagnosis of probable asbestosis. The defendants' expert also discounted the suggestion that Mr. Manuel's kidney cancer, from which he has fully recovered, was caused by exposure to asbestos. The defendants' expert also discounted the risk of Mr. Manuel developing cancer again as a result of asbestos exposure.
The jury determined Mr. Manuel's injury warranted compensation in the amount of $20,000. Our review of the evidence reveals no abuse of discretion in this award.

4. Lawrence Mouton
Prior to trial, Lawrence Mouton died after suffering a heart attack at the age of 72. The heart attack was not alleged to be related to asbestos exposure, and only a survival claim was asserted by Mr. Mouton's heirs for his asbestos related injury and resulting damages suffered prior to his death.
Mr. Mouton's deposition was taken a year before his death. He testified that he worked at Cities Service for approximately 35 years, first as a bricklayer, then as a supervisor. At the time of his deposition, Mr. Mouton described himself as "pretty active;" he travelled, fished, and worked in his yard somewhat. He suffered from a hernia caused by coughing and complained of becoming short-winded easily, to the extent that he could no longer hunt. He also had arteriosclerosis.
Mr. Mouton was diagnosed with pleural plaques and probable asbestosis. The defendants' physician agreed with the diagnosis of pleural plaques caused by asbestos exposure, but did not find any indication of asbestosis. Mr. Mouton evidenced some signs of restricted pulmonary function that may have indicated asbestosis, but the findings were not conclusive. Considering this evidence, we find no abuse of discretion in the jury's award of $20,000.

5. Earl Myers
Earl Myers was an electrician for Cities Service for 22 years. At the time of trial, he suffered from high blood pressure and heart disease and testified that he is unable to do much of anything because he is so short of breath. He is unable to hunt, fish, or climb mountains with his family and is afraid of getting cancer.
The plaintiffs' physician diagnosed Mr. Myers with asbestosis, while the defendants' physician diagnosed pleural plaques which have not affected his pulmonary function. It was agreed that Mr. Myers' heart disease and smoking history are significant; he was also somewhat overweight. Given the diverging medical testimony and Mr. Myers' other unrelated ailments, we affirm the $20,000 award, finding no abuse of discretion.

6. Russell Trahan
Russell Trahan worked at the Cities Service refinery in various crafts for 18 years. He was a lifelong smoker. At the time of trial, he was afraid of getting cancer and experienced shortness of breath, insomnia, and an inability to tolerate much exercise. He was 69 years old.
Mr. Trahan was diagnosed with pleural plaques and probable asbestosis. The defendants' physician diagnosed pleural plaques or pleural thickening along with interstitial lung disease which can be indicative of asbestosis. Mr. Trahan showed some obstruction on his pulmonary tests which was attributable to his smoking history.
*391 The medical evidence definitively showed that Mr. Trahan's lungs have been affected by exposure to asbestos dust. However, it is also clear that Mr. Trahan's physical condition has been adversely affected by cigarette smoking. Considering the evidence presented, we find no abuse of discretion in the jury's award of $30,000.

7. Richard Watson
Richard Watson was a pipe fitter at Cities Service for 35 years. Prior to trial, he died of in-stage lung fibrosis, the cause of which was hotly disputed.
At the time of his deposition in 1988, Mr. Watson was 70 years old and able to walk two miles a day and do a little gardening. He had recently stopped smoking. However, he complained of extreme shortness of breath and had undergone a lung biopsy in 1987. The results of the biopsy were inconclusive, but asbestosis was considered.
Mr. Watson's fibrotic lung disease progressed very rapidly and killed him within five years of the first symptoms, an atypical course for asbestosis. An autopsy was performed and the plaintiffs' pathologist diagnosed asbestosis, whereas the defendants' pathologist ruled out asbestosis and diagnosed usual interstitial fibrosis, or pneumonitis, an idiopathic disease causing restricted pulmonary function as does asbestosis. Mr. Watson also had pleural plaques.
Mr. Watson's heirs asserted a survival action as well as wrongful death claims. The jury awarded $40,000 on the survival action but granted no wrongful death damages. The jury apparently did not believe Mr. Watson's death was caused by asbestos exposure, although his lungs were injured by that exposure during his lifetime. Considering the evidence, the jury did not abuse its discretion in making this award.

8. Clodile Romero
Clodile Romero died of lung cancer two years before trial. As with Mr. Watson, his heirs asserted survival and wrongful death claims, the latter of which were denied. Mr. Romero's heirs were awarded $40,000 as survival damages.
Mr. Romero's deposition was taken in 1988 when he was 74 years old. At that time, he complained of weakness and shortness of breath but was able to continue doing what he always did, such as raise 30 head of cattle and mow the lawn. He had diabetes and had undergone back surgery and prostate surgery. Mr. Romero was a smoker and worked at Cities Service for 32 years as a general craft foreman.
Mr. Romero died two months after being diagnosed with lung cancer, specifically adenocarcinoma. Upon autopsy, the plaintiffs' pathologist diagnosed cancer and asbestosis, whereas the defendants' pathologist diagnosed cancer and emphysema from smoking. He found rare asbestos bodies, but no diffuse interstitial fibrosis and therefore, no asbestosis. Mr. Romero's pleura was scarred, showing plaques or thickening.
In making its award of survival damages, the jury could have reasonably concluded that Mr. Romero sustained an asbestos related injury to his lungs, but that he died from the effects of cigarette smoking. We find no abuse of discretion in the jury's award and affirm.

9. Joseph Comeaux
Joseph Comeaux worked as a laborer at the Cities Service plant for 35 years. He died in 1988 a few weeks after being diagnosed with cancer. His heirs asserted survival and wrongful death claims and were awarded $40,000 on the survival claim.
Mr. Comeaux was diagnosed with oat cell carcinoma, a cancer which can be caused by cigarette smoking or asbestos exposure. Upon autopsy, the plaintiffs' pathologist attributed the cancer to the synergistic effect of smoking with asbestos exposure. He diagnosed asbestosis based on the number of asbestos bodies he found in tissue samples and found pleural scarring on both lungs. The defendants' pathologist ruled out asbestosis because he found no diffuse interstitial fibrosis, which finding is necessary for the diagnosis. He found evidence of asbestos exposure in the form of occasional asbestos bodies but he attributed the cancer solely to the effects of smoking.
*392 The jury found that Mr. Comeaux was exposed to asbestos and was injured by that exposure. However, the jury apparently did not find that Mr. Comeaux's cancer was caused by asbestos exposure. Accordingly, we find no abuse of discretion in the jury's award of survival damages and affirm.

ISSUE 3: JURY CONFUSION
In addition to arguing that the jury's awards represent an abuse of discretion because they were so low, the plaintiffs/appellants also argue that the awards themselves represent jury confusion and, for that reason, must be reversed. They contend the trial judge should have granted the request to submit only two or three cases to the jury at a time, interrupted only by argument.
This was a matter purely within the trial judge's discretion. The record and the verdicts rendered do not evidence jury confusion and do not represent an abuse of discretion on the part of the trial judge.

ISSUE 4: LOSS OF CONSORTIUM
The final issue raised in this appeal is the denial of Faye Myers' loss of consortium claim. The jury interrogatories demonstrate that the jury concluded Faye Myers was not entitled to any award for loss of consortium. Our review of both Mr. and Mrs. Myers' testimony reveals that Mr. Myers is unable to participate in certain activities because of his health. He is no longer able to perform certain tasks around the house, which he did so that his wife would not have to. Mrs. Myers testified that she must stay with her husband all the time. This is essentially the extent of the evidence on this issue.
Whether a party is entitled to damages or not is an issue of fact to be decided by the trier of fact. Lonthier v. Northwest Ins. Co., 497 So.2d 774 (La.App. 3d Cir.1986). Mrs. Myers' claim rested on jury determinations of credibility and causation, factual matters which will not be overturned on appeal in the absence of manifest error. After reviewing the evidence, we find no manifest error in the jury's conclusion and affirm.

CONCLUSION
We have reviewed the voluminous records herein and do not find any abuse of discretion on the part of the trial judge or the jury in the verdicts and judgment rendered. For these reasons, the judgment in favor of the plaintiffs and against Insurance Company of North America, Owens-Illinois, Inc., Keene Corporation, and the Manville Corporation Asbestos Disease Compensation Fund, which was a party to this litigation but did not participate at trial, is affirmed, at appellants' costs.
AFFIRMED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.