CRAIN, J.
The plaintiffs, Terri Clark and Betty Clark, appeal a summary judgment dismissing their claims with prejudice. We affirm.
FACTS AND PROCEDURAL HISTORY
The Clarks owned a building containing four apartments at 9121 Great Smokey in Baton Rouge. To address drainage issues with the sewer system on the property, the City of Baton Rouge/Parish of East Baton Rouge, through its Department of Public Works, installed a pump, sometimes referred to as a "liberty pump," in the property's sewer service line in July 2002, and later replaced the pump in November 2004. The Clarks filed this suit on March 9, 2005, alleging the apartment building sustained damage on several occasions from December 2000 through March 2005, because the liberty pumps were defective, the City/Parish failed to properly install or maintain the pumps, and the City/Parish failed to maintain storm drains.[1]
The City/Parish filed an exception of prescription, which the trial court granted. In a previous appeal, this court affirmed the trial court's judgment to the extent it dismissed the Clarks' claims for incidents occurring before March 9, 2004, but reversed and remanded with respect to claims arising on or after that date. See Clark v. E. Baton Rouge Parish Department of Public Works , 15-1646 (La. App. 1 Cir. 6/3/16), 196 So.3d 142, 149.
On remand, the City/Parish filed a motion for summary judgment requesting dismissal of the remaining claims, arguing the Clarks could not meet their burden of proof. The trial court agreed and, in a *412 judgment signed April 12, 2017, dismissed the Clarks' petition. The Clarks appeal.
DISCUSSION
After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. Code Civ. Pro. art. 966A(3). The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of every action. La. Code Civ. Pro. art. 966A(2). In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. In re Succession of Beard, 13-1717 (La. App. 1 Cir. 6/6/14), 147 So.3d 753, 759-60.
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue before the court on the motion for summary judgment, the mover's burden does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point to the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden then shifts to the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. Code Civ. Pro. art. 966D(1).
A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. Hines v. Garrett, 04-0806 (La. 6/25/04), 876 So.2d 764, 765 (per curiam ); Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 751. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Hines, 876 So.2d at 765-66 ; Smith , 639 So.2d at 751. Because the applicable substantive law determines materiality, whether a particular fact in dispute is material must be viewed in light of the substantive law applicable to the case. Bryant v. Premium Food Concepts, Inc., 16-0770 (La. App. 1 Cir. 4/26/17), 220 So.3d 79, 82, writ denied, 17-0873 (La. 9/29/17), 227 So.3d 288.
The claims herein based on the allegedly defective nature of the liberty pumps, whether under Louisiana Civil Code article 2317 or under Louisiana Civil Code article 2315, are subject to the same burden of proof. The Clarks must prove (1) the City/Parish had custody of the pumps, (2) the pumps were defective because they had a condition that created an unreasonable risk of harm, (3) the City/Parish had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and (4) the defect was a cause in fact of the alleged damages. See La. R.S. 9:2800 ; Fontenot v. Patterson Insurance, 09-0669 (La. 10/20/09), 23 So.3d 259, 267-68 ; Lee v. State, Department of Transportation and Development, 97-0350 (La. 10/21/97), 701 So.2d 676, 677-78 ; Greene v. Succession of Alvarado, 15-1960 (La. App. 1 Cir. 12/27/16), 210 So.3d 321, 332-33.
In support of its motion, the City/Parish submitted numerous exhibits, including the deposition of Greg Wiley, the current manager of the Wastewater Collection Division of the City/Parish's Department of Public Works; the depositions of Terri Clark and Betty Clark; and documentation generated by the City/Parish in connection with the *413 installation, maintenance, repair, and replacement of the pumps. Wiley explained that liberty pumps are typically needed when the normal gravity flow is not sufficient to properly drain a building's sewer system into the municipal line. The City/Parish installs the pump in the property owner's service line, and it pumps sewerage from the building to the municipal line. The only cost incurred by the property owner is the electrical expense necessary to operate the system. The City/Parish also agrees to repair and replace the system, which contains an alarm designed to notify the property owner if the pump malfunctions. The owner is provided a number to call for assistance. As of the date of Wiley's deposition, the City/Parish had installed about 900 liberty pumps.
A liberty pump was installed on the Clarks' property on July 24, 2002.[2] At that time, the property was owned by Bill Clark, Betty's husband and Terri's father, who signed an agreement with the City/Parish allowing installation of the pump, confirming the owner would restrict solid waste from entering the system, and agreeing the owner would immediately contact and advise the City/Parish of any difficulties with the system. The City/Parish's records reflect no service requests on the property until about eighteen months later on February 6, 2004, when the owner complained sewerage was backing up due to weather conditions. An inspector went to the site and confirmed that the municipal lines were clear.
The next service request was about a month later on March 12, 2004, which resulted in a maintenance check of the system the same day. The records indicate the pump would not work due to grease on the pump floats, which Wiley explained can cause the pump to malfunction and, in this instance, resulted in a blown fuse. In addition to grease, the repairman also found "Q-tips" and other debris in the pump. After the pump was cleaned and the fuse replaced, the system was tested and worked as designed. The records reflect Betty and Terri came to the property and were told the situation was a "pump malfunction"; however, the documentation indicates the malfunction was caused by impermissible solid waste in the system. The City/Parish representative explained to the Clarks how the pump works. The City/Parish offered to install some grease traps, and the records suggest work may have been done on March 31, 2004.
The next maintenance call was several months later on November 3, 2004. According to a report written by the responding City/Parish employee, the breaker on one of the pumps was tripped. After the breaker was reset, the alarm sounded and the second pump came on and emptied the tank. The report explains the system is designed for the second pump to activate if the first pump fails. The alarm box appeared to have been opened, and the employee reset the gasket on the door and tightened the screws. An electrician was called to the scene, and he replaced the inoperative pump. The documentation indicates a large amount of grease was found in the system tank, and solid waste, including a face cloth and personal hygiene items, were in the pumps.
The claims at issue are based on events that allegedly occurred during 2004.[3] Terri *414 Clark submitted an affidavit stating the property experienced "backups to sewer lines and/or interior damage due to overflow of sewage" (emphasis added) on four dates in 2004: February 3, March 9, March 17, and November 3. At her deposition, Terri conceded she could not remember the dates when the building actually sustained damage, but agreed the claim documentation sent in 2004 identified two dates when sewerage backup caused damage: March 9, 2004, and November 2, 2004.
Pretermitting consideration of the first two elements of the Clarks' burden of proof, we find the evidence submitted by the City/Parish sufficiently points out an absence of factual support for the third element of the plaintiffs' burden-proof the City/Parish had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time. The burden of proof thus shifted to the Clarks to produce factual support sufficient to establish the existence of a genuine issue of material fact. See La. Code Civ. Pro. art. 966D(1).
The Clarks presented no evidence establishing the City/Parish had actual knowledge of any defect in the liberty pump and failed to take corrective measures within a reasonable time. To the contrary, the records maintained by the City/Parish confirm its employees promptly responded when notified of any problems potentially involving the pump. On each occasion, the responding employees performed the necessary maintenance and repairs, and, when required, arranged for replacement of the pump the same day.
Absent actual knowledge of any defect, the Clarks must present evidence the City/Parish had constructive notice of a defect. Louisiana Revised Statute 9:2800D defines "constructive notice" as "the existence of facts which infer actual knowledge." Constructive knowledge may be shown by facts demonstrating the defect or condition existed for such a period of time that it would have been discovered and repaired had the public body exercised reasonable care. Greene, 210 So.3d at 334. A public entity has constructive knowledge if it "knew or should have known" of the defective condition. Id.
Quoting testimony from Wiley, the Clarks assert the liberty pumps are "cheap disposable pumps" that are "easily clogged," and, therefore, the City/Parish should have known the pumps were defective and conducted periodic inspections. The Clarks selectively quote Wiley's characterization of the pumps as "cheap," while ignoring his description of their reliability:
They do work well. You can see that they last for a couple of years without any-without any issues. So they do their job and then in the occasion that there is a failure, you know, we have a pretty fast response to correct those.
The Clarks further contend the evidence presents a genuine issue of material fact with respect to the cause of the pump's malfunction on the occasions at issue, citing a conflict in the evidence as to whether the system contained impermissible solid waste when it was serviced in November 2004. Any factual issue in that regard, however, bears on whether the system was defective, not whether the City/Parish had notice of any defect in the liberty pump and, after receiving notice, failed to take corrective measures within a reasonable time. The evidence establishes the City/Parish was notified of a reported issue with the liberty pump on two occasions in 2004, and, each time, promptly responded and restored the system to operation.
*415 With 900 liberty pumps located within its jurisdiction, the City/Parish relies on property owners to report any problems with a system, which is equipped with an alarm designed to notify the owner when a pump malfunctions. We reject the Clarks' contention that the obligation to maintain the pumps requires the City/Parish to regularly inspect each and every one of these pumps absent notification or knowledge of a problem. Cf. Jones v. Hawkins, 98-1259 (La. 3/19/99), 731 So.2d 216, 220 (holding that municipality's duty to maintain its public ways does not encompass conducting periodic inspections of its streets, and the failure to conduct such inspections does not imply knowledge of a dangerous defect on those streets).
The Clarks failed to present evidence establishing a genuine issue of material fact concerning the City/Parish's knowledge, actual or constructive, of any defect in the liberty pump, and its alleged failure to take corrective measures within a reasonable time of having acquired such knowledge. The trial court did not err in granting summary judgment to the City/Parish.[4]
CONCLUSION
The April 12, 2017 judgment is affirmed. All costs of this appeal are assessed to Terri Clark and Betty Clark.
AFFIRMED.

The Clarks sued the "East Baton Rouge Parish of Department of Public Works," but the City/Parish filed responsive pleadings. We will refer to the defendant herein as the "City/Parish."

The evidence indicates the system installed for the Clarks actually contains two pumps. For simplicity, we will refer to the system in the singular as a "liberty pump."

Although the petition includes allegations of flooding through 2005, Terri Clark confirmed at her deposition that the plaintiffs are not pursuing any claims for damages allegedly sustained in 2005, and no evidence was presented to establish any damages during that year.

The petition also alleges the City/Parish negligently installed the liberty pumps and failed to properly maintain storm drains. The Clarks presented no evidence or argument in support of those claims, which we likewise find were properly dismissed in the summary judgment.