| | | |
|---|---|---|
| HOLLY DUNN | * | NO. 2025-CA-0201 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| BOARD OF COMMISSIONERS | * | |
| OF THE PORT OF NEW | | FOURTH CIRCUIT |
| ORLEANS AND PORTS | * | |
| AMERICA LOUISIANA, LLC | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-07983, DIVISION "J"
Honorable D. Nicole Sheppard,
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

Thomas W. Shlosman, Esq.
SHLOSMAN LAW FIRM
4907 Magazine Street
New Orleans, LA 70115

      COUNSEL FOR PLAINTIFF/APPELLANT

Andre J. Mouledoux
Katie L. Gonsoulin
MOULEDOUX, BLAND, LEGRAND & BRACKETT
701 Poydras Street
Suite 4250
New Orleans, LA 70139

      COUNSEL FOR DEFENDANT/APPELLEE

          **REVERSED**

          **DECEMBER 3, 2025**

This appeal arises from a judgment of the Civil District Court for the Parish of Orleans granting summary judgment in favor of defendant-appellee, the Board of Commissioners of the Port of New Orleans ("the Port"), dismissing the claims of plaintiff-appellant, Holly Dunn, for injuries she sustained on an escalator at the Erato Street Cruise Terminal. For the following reasons, we reverse.

On November 17, 2018, Dunn and her fiancé, Alan Moon, were boarding a Carnival Cruise Line vessel via the Erato Street Cruise Terminal. While ascending the terminal escalator, Moon's pant leg was allegedly caught by a protruding wire or rod, causing him to fall backward onto Dunn, who also fell and sustained injuries.

Dunn filed suit against the Port, which owns the escalator, as well as ThyssenKrupp Elevator Corporation ("ThyssenKrupp"), the escalator's manufacturer and maintenance contractor, and Concord Shore Services ("Concord"), a Carnival contractor responsible for passenger movement. She alleged negligence and strict liability.

The Port moved for summary judgment, asserting it lacked actual or constructive notice of any defect under La. R.S. 9:2800, and maintenance

responsibilities rested solely with contractors. The district court granted the motion, finding the Port lacked notice. This appeal timely follows.

Appellate courts review summary judgments de novo, applying the same standard as the trial court. *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1182-83 (La. 1994). Summary judgment is appropriate only where there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.

A public entity's liability for defective things within its custody is governed by La. R.S. 9:2800 and La. C.C. arts. 2317.1 and 2322. Under any of these theories of recovery, a plaintiff must prove by a preponderance of the evidence that: (1) the entity owned or had custody of the thing which caused the damage; (2) the thing was defective due to a condition creating an unreasonable risk of harm; (3) the entity had actual or constructive notice of the condition yet failed to take corrective action within a reasonable period of time; and (4) the defect was a cause of the plaintiff's harm. *George v. ABC Ins. Co.*, 22-0148, p. 6 (La. App. 4 Cir. 10/26/22), 351 So.3d 447, 453 (citations omitted).

Constructive notice under La. R.S. 9:2800(D) means the existence of facts which infer actual knowledge. Courts have held that constructive notice may be shown where a condition existed for such a period of time that, through the exercise of ordinary care and diligence, it would have been discovered. *See*, *e.g.*, *Flenner v. Sewerage & Water Bd. of New Orleans*, 12-0829, p. 5 (La. App. 4 Cir. 3/4/13), 110 So.3d 661, 665; *LeBlanc v. City of Abbeville*, 18-206, p. 12 (La. App. 3 Cir. 10/17/18), 259 So.3d 372, 386; *Clark v. East Baton Rouge Parish Dep't of Public Works*, 17-1445, p. 7 (La. App. 1 Cir. 4/6/18), 248 So.3d 409, 414; *Minor v.*

*Red River Parish Police Jury*, 54,182, p. 8 (La. App. 2 Cir. 1/12/22), 333 So.3d 549, 554.

The Port's lack of notice argument rests largely on the absence of passenger complaints, Concord reports, or ThyssenKrupp maintenance records identifying a protruding wire prior to Dunn's fall. While the Port may ultimately prevail at trial, the record on summary judgment reveals several genuine issues of material fact.

First, John Robinson, a traveling companion, testified he observed a six-inch green wire protruding from the escalator's brush guard immediately after the fall. If credited, this establishes a hazardous condition. The Port relies on the testimony of Charles Overton, a ThyssenKrupp mechanic, who stated that no component of the escalator would extend in the manner Robinson described. That testimony, however, merely creates a factual dispute. The Port's Statement of Uncontested Material Facts does not identify as an uncontested fact that the wire was not part of the escalator assembly, and the conflicting testimony cannot be resolved at the summary judgment stage. Whether the object was a component part or a foreign object is disputed and cannot be resolved on summary judgment.

Second, the record contains evidence of industry standards requiring daily visual inspections before startup. Plaintiff submitted deposition testimony and documentation showing that ASME Code § 8.6.10.5 calls for daily visual inspections of skirt panels and brush guards.[1] Milton Haynes, the Port's maintenance foreman, admitted he never performed these inspections and had not been trained to do so.

---

[1] Section 8.6.10.5 of the ASME Code prescribes that an escalator owner, or the person(s) authorized by the owner, shall perform certain startup inspections and tests prior to starting the unit, including "[v]isually examin[ing] the skirt or dynamic skirt panels." Dunn contends that Section 8.6.10.5 and deposition testimony submitted by her in opposition to the motion for summary judgment established that the Port had a duty to visually inspect the escalator brush guards before starting the escalator.

Industry standards are relevant to determining the existence of a duty. *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180-81 (5th Cir. 1975) (industry manuals admissible to establish standard of care); *Falgout v. Higbee Lancoms, LP*, CA No. 50-27, 2020 WL 7364482, at *6 (E.D. La. Dec. 15, 2020) ("industry standards should bear on defining [the owner's] duty"). Applying these authorities, ASME Code § 8.6.10.5 is appropriately considered when assessing whether the Port owed a duty to visually inspect its escalator prior to startup.

Chad Waldrup, the Account Manager for ThyssenKrupp, testified that under Section 8.6.10.5 of the ASME Code, it is best practice that an operator inspect an escalator prior to turning it on. He further testified that under the ASME Code, brush guards should be visually inspected during the start-up procedure. Charles Overton, a ThyssenKrupp field elevator technician, testified that an escalator owner's employees should be trained on escalator start-up and shut-down procedures and that prior to starting an escalator, an employee should conduct a visual inspection to make sure that nothing is protruding from the escalator or present that might impact the safe operation of the escalator.

By contracting with ThyssenKrupp for maintenance, utilizing Concord for passenger movement, and operating a high-traffic cruise terminal, the Port recognized the operational risks associated with escalators. A factfinder could infer constructive notice if a required inspection, had it been performed, would have revealed the hazardous condition. Whether the alleged protrusion was discoverable and whether the Port's failure to inspect breached its duty are factual questions that cannot be resolved on summary judgment.

4

Third, Louisiana jurisprudence imposes a heightened duty of care on escalator owners. Because a malfunctioning elevator/escalator can quickly become a dangerous instrumentality, Louisiana law "places a high degree of care upon elevator/escalator owners, similar to that imposed upon common carriers." *Rosell v. ESCO,* 549 So.2d 840, 848 n. 3 (La.1989); *see also Broussard v. State ex rel. Off. of State Bldgs.,* 12-1238, p. 14 (La. 4/5/13), 113 So.3d 175, 186. Under this heightened standard of care, the owner of an elevator/escalator is required "to do all that human care, vigilance and foresight can reasonably suggest under the circumstances and, in view of the character of the mode of conveyance adopted, to guard against accidents and injuries resulting therefrom...." *Wolverton v. City Stores Co.,* 363 So.2d 1321, 1325 (La. App. 4th Cir. 1978) (quoting *Otis Elevator Co. v. Seale,* 334 F.2d 928, 929 (5th Cir. 1964)); *see also Broussard*, 12-1238, p. 15, 113 So.3d at 187.

Finally, although the Port argues that ThyssenKrupp alone bore responsibility for inspections, the owner's duty under La. C.C. arts. 2317.1 and 2322 is non-delegable. "The owner of a building is solely responsible for damages caused due to vices and/or defects in the building." *Perniciaro v. Liberty Mut. Ins. Co.,* 02-0889, p. 2 (La. App. 4 Cir. 5/20/02), 820 So.2d 600, 601. "This is a non-delegable duty *vis-à-vis* persons who claim injury due to vices or defects in the building." *Id. See also Nunez v. Isidore Newman High Sch.*, 306 So.2d 457, 459 (La. App. 4th Cir. 1975) ("Newman has the duty to employ reasonable care in discovery of defects on its premises. This duty generally cannot be delegated to others."); *Carrero v. Mandina's, Inc.*, 19-0158, p. 11 (La. App. 4 Cir. 8/7/19), 364 So.3d 19, 26 (rejecting "Mandina's attempts to avoid liability by shifting the blame for the existence of the unreasonably dangerous condition to the architectural firm

5

that allegedly designed the access ramp, the contractor who installed the defective handrail, and the City Of New Orleans inspectors who approved it"). The Port may contract for assistance but cannot shift its statutory responsibility to maintain reasonably safe premises. The escalator was owned by the Port, located on its property, and used by thousands of passengers. Whether the protruding wire was part of the assembly or a foreign object, and whether inspections were properly conducted, remain factual questions. The Port cannot absolve itself merely by hiring a contractor.

Because the record shows genuine issues of material fact as to whether a hazardous condition existed and whether the Port had constructive notice, summary judgment was inappropriate. Accordingly, the judgment of the district court granting summary judgment in favor of the Port is reversed, and the case is remanded for further proceedings.

**REVERSED**